**BARON & BUDD, P.C., et al., Appellant,**

v.

**UNSECURED ASBESTOS CLAIMANTS COMMITTEE, et al., Appellee.**

v.

**Congoleum Corporation, Debtor.**

**Civ. A. Nos. 04–5633(SRC) to 04–5636(SRC).**

United States District Court, D. New Jersey.

Feb. 25, 2005.

Bruce Hugh Levitt, Levitt & Slafkes, PC, South Orange, NJ, for Appellants Baron & Budd, P.C., Foster & Sear, L.L.P., McCurdy & McCurdy, L.L.P., Motley Rice, L.L.C., Provost & Umphrey, L.L.P., Brayton Purcell, and Silber Pearlman, L.L.P.

Timothy P. Duggan, Stark & Stark, Princeton, NJ, for Appellant Campbell, Cherry, Harrison, Davis & Dove, P.C.

Nancy Isaacson, Goldstein, Lem & Isaacson, PC, Springfield, NJ, for Appellee Unsecured Asbestos Claimants Committee.

Stephen V. Falanga, Connell Foley, LLP, Roseland, NJ, for Appellee Travelers Casualty and Surety Company.

Stefano V. Calogero, Cuyler Burk LLP, Parsippany, NJ, for Appellee St. Paul Fire and Marine Insurance Co.

Martin Frederick Siegal, Siegal & Napierkowski, Cherry Hill, NJ, Barbara Maria Almeida, O'Melveny and Myers L.L.P., New York, NY, for Appellees Century Indemnity Company, ACE American Insurance Company, and ACE Property & Casualty Insurance Company.

Kevin M. Haas, Cozen O'Connor, Newark, NJ, for Appellee Mt. McKinley Insurance Company formerly known as Gibraltar Casualty Company and Everest Reinsurance Company formerly known as Prudential Reinsurance Company.

## MEMORANDUM OPINION

CHESLER, District Judge.

Before the Court is an appeal by the law firms of Baron & Budd, P.C. ("Baron & Budd"), Campbell, Cherry, Harrison, Davis & Dove, P.C. ("Campbell Cherry"), Foster & Sear, L.L.P. ("Foster & Sear"), McCurdy & McCurdy, L.L.P. ("McCurdy & McCurdy"), Motley Rice, L.L.C. ("Motley Rice") and Provost & Umphrey, L.L.P. ("Provost & Umphrey") (collectively the "Appellants"). On appeal are the bankruptcy court's September 2, 2004 Order Requiring Compliance with Bankruptcy Rule 2019 and Granting Other Relief (Bankr.Dkt. No. 1153) (the "Rule 2019 Compliance Order") and three other Orders of the bankruptcy court, filed on October 5 and 6, 2004. The three other orders are: (1) Order Denying Motion or Application for the Entry of an Order Reconsidering Order Requiring Compliance with Bankruptcy Rule 2019 and Other Relief (dated October 6, 2004) (Bankr.Dkt. No. 1341) (the "Order Denying Campbell & Cherry Motion to Amend"); (2) Order Denying Motion to Amend Order Requiring Compliance with Bankruptcy Rule 2019 and Granting Other Relief filed by Motley Rice (dated October 5, 2004) (Bankr.Dkt. No. 1343) (the "Order Denying Motley Rice Motion to Amend"); (3) Order Denying Motion to Amend Order Requiring Compliance with Bankruptcy Rule 2019 and Granting Other Relief filed

by Baron & Budd and Silber Pearlman (dated October 6, 2004) (Bankr.Dkt. No. 1344) (the "Order Denying Baron & Budd Motion to Amend").

Movants in the bankruptcy court, and now opposing this appeal, are Century Indemnity Company & ACE American Insurance Company ("Century") and Travelers Casualty and Surety Company & St. Paul Fire and Marine Insurance Company ("Travelers") (collectively the "Appellees" or "Insurers").

## BACKGROUND AND PROCEDURAL HISTORY

Appellants represent multiple tort-victim creditors in this Chapter 11 bankruptcy case pending before Judge Ferguson. Appellees are the issuers of liability insurance policies to the Debtors. The Insurers are currently engaged in state court coverage litigation with the Debtors over the extent of coverage their policies provide for asbestos related claims. *See* Motion to Compel the Law Firm of Motley Rice, L.L.C. to Comply with its Obligation under Federal Rule of Bankruptcy Procedure 2019 (filed on July 6, 2004) (Bankr.Dkt. No. 922) ("Century Rule 2019 Motion") at 5 ("The coverage action involving essentially the same parties is pending in the Superior Court of New Jersey, Law Division, Middlesex County, and is captioned *Congoleum Corporation v. ACE American Insurance Company et al.* (Docket No. M ID–L8908–01).").

On July 6, 2004, Travelers filed a Motion Pursuant to Fed. R. Bankr.P.2019 and 11 U.S.C. § 105 for an Order (a) Determining that Certain Asbestos Claimants Counsel Have Failed to Comply with Rule 2019 and Barring those Certain Counsel from Being Heard in this Case; (b) Invalidating any Authority or Acceptances Given, Procured, or Received by those Certain Non–Complying Counsel in Support of the Debtor's Proposed Plan; and/or (c) For Other Appropriate Relief (filed on July 6, 2004) (Bankr.Dkt. No. 919) ("Travelers' Rule 2019 Motion"). On July 7, 2004, Century filed an additional motion seeking similar relief. *See* Century Rule 2019 Motion.

Judge Ferguson heard oral argument on July 26, 2004 and issued an oral ruling on the record granting, in substantive part, the Rule 2019 Motions. Then, on September 2, 2004, Judge Ferguson entered the Rule 2019 Compliance Order, calling on all noncomplying Plaintiff firms to file Rule 2019 statements within ten days. The Order was specifically directed at the four firms who opposed the Rule 2019 motions—Motley Rice, Baron & Budd, Silber Perlman, and Provost & Umphrey—and provided, in relevant part, that:

> Rule 2019 Statement[s] ... shall include ... (d) a list and detailed explanation of any type of co-counsel, consultant or fee-sharing relationships and arrangements whatsoever, in connection with this bankruptcy case or claims against any of the Debtors, and attachment of copies of any documents that were signed in conjunction with creating that relationship or arrangement ...

Rule 2019 Compliance Order at 3.

A Motion for Reconsideration of the Rule 2019 Compliance Order, pursuant to Fed.R.Civ.P. 59 and Fed. R. Bankr.P. 9023, was filed by Campbell Cherry on September 13, 2004 and, on the same day, separate Motions to Amend were filed by Motley Rice, and by Baron & Budd, Provost & Umphrey, and Silber Pearlman. On September 28, 2004, Foster & Sear, McCurdy & McCurdy and Campbell Cherry filed joinders to the Baron & Budd Motion to Amend. Together with these motions, Appellants filed applications under Fed.R.Civ.P. 62(b) and Fed. R. Bankr.P. 7062 seeking to stay the Rule 2019 Compliance Order pending a hearing

on the motion. Judge Ferguson denied the stay application and, on October 5, 2004, in three separate orders, denied the Rule 59 Motions. On October 15, 2004, a slightly different group of firms than the four that opposed the Rule 2019 Compliance Order, sought to stay the Order pending its appeal, and appeal of each of the three orders denying the Rule 59 Motions. On October 25, 2004, after additional briefing and oral argument, Judge Ferguson denied this second stay application.

Appellants purport to have already complied with their disclosure obligations under Rule 2019: Baron & Budd, Campbell Cherry, Motley Rice and Provost Umphrey have each filed Rule 2019 Statements which provide information about the creditors they represent in this bankruptcy case. Thus, on October 15, 2004, appellant firms filed four separate notices of appeal, one appealing from the Rule 2019 Compliance Order and three appealing from Judge Ferguson's three October Orders denying the firms' Rule 59 Motions (Bankr.Dkt.Nos.1373, 1374, 1375). On November 19, 2004, Appellants filed a motion requesting this Court to stay the Rule 2019 Compliance Order pending decision of this appeal. That request was denied, after full briefing and oral argument, on December 20, 2004.

### BASIS OF APPELLATE JURISDICTION

■ Jurisdiction of the district courts over appeals from orders of bankruptcy courts is governed by 28 U.S.C. § 158(a), which provides that "[t]he district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders, and decrees...." 28 U.S.C. § 158(a). Appellees argue that the bankruptcy court's Rule 2019 and Rule 59 Orders do not satisfy the § 158 "finality" requirement.

It is well settled in the Third Circuit, however, that "considerations unique to bankruptcy appeals have led us consistently in those cases to construe finality in a more pragmatic, functional sense than with the typical appeal," which generally requires an order to "dispose of all issues as to all parties to the case" before such an order can be considered final. *See, e.g., In re Prof'l Ins. Mgmt.*, 285 F.3d 268, 279 (3d Cir.2002). The rationale behind the Third Circuit's pragmatic interpretation of finality stresses· the protracted nature of bankruptcy proceedings; the large number of involved parties with varied claims; and the fact that delay in resolving discrete claims until after final approval of a reorganization would waste time and resources, particularly if the appeal resulted in reversal of a bankruptcy court order necessitating re-appraisal of the entire plan. *Id.* (citing *In re White Beauty View*, 841 F.2d 524, 526 (3d Cir.1988)).

■ Moreover, even an order that is not final under § 158(a) may be appealable under the collateral order doctrine established in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). The Third Circuit has applied *Cohen* to provide

a narrow exception to the general rule permitting appellate review only of final orders. An appeal of a nonfinal order will lie if (1) the order from which the appellant appeals conclusively determines the disputed question; (2) the order resolves an important issue that is completely separate from the merits of the dispute; and (3) the order is effectively unreviewable on appeal from a final judgment.... To this end, as a doctrinal matter, orders that meet the three prongs described above are deemed to be "final decisions" within the meaning of the statute.

*Petroleos Mexicanos Refinacion v. M/T KING A (EX–TBILISI),* 377 F.3d 329, 334 (3d Cir.2004).

In this case, the Court is satisfied that jurisdiction is proper either as an appeal of a final order under § 158(a) or, in the alternative, under the collateral order doctrine. Pragmatically speaking, because the information sought in the Rule 2019 Compliance Order bears on plan confirmation procedures and, allegedly, the overall fairness of the plan, review of the order is most practical at this juncture, before Creditors vote on the plan.

■ But even if review were not appropriate under the practical approach in *Prof'l Ins. Mgmt,* it is appropriate under the collateral order doctrine. First, insofar as the Rule 2019 Compliance Order compels Appellants to disclose information which is argued to be confidential and proprietary, once such disclosures are made, there can be no remedy for the pecuniary, competitive injuries that will allegedly result-in other words, if the Order is not reviewed at this juncture then there can be no meaningful appellate review. Second, Judge Ferguson's Orders conclusively determine the disputed question, as evidenced by the fact that the Judge denied Appellants' requests for reconsideration, amendment and a stay. The issues raised in the Rule 2019 Motions and Order were discrete and no effect or impact of those decisions would change as a result of the bankruptcy court's final confirmation of the reorganization plan. Finally, the importance of the issues raised on appeal is evident from the entirety of the merits discussion below.

■ Appellees argue, that "[w]hile there appear to be no reported cases addressing the finality of rulings under Rule 2019(a), courts have consistently found that orders governing analogous types of disclosure ... are interlocutory and not subject to appeal as of right." Memorandum of Law in Opposition to Appeal, Travelers & St. Paul ("Travelers' Opp. Mem.") at 8. Yet, even if the Rule 2019 Compliance Order is treated as interlocutory, pursuant to 28 U.S.C. § 158(a)(3) the district court has jurisdiction, at the court's discretion, to hear appeals from interlocutory orders and decrees entered by the bankruptcy court.

■ Section 158 is, however, silent as to the standard courts should apply in determining when an interlocutory appeal should be granted. Faced with this issue, a number of courts have recognized that 28 U.S.C. § 1292(b), which provides the standard for such appeals from district court interlocutory orders, applies to appeals from bankruptcy courts as well. *See, e.g., In re Neshaminy Office Bldg. Assocs.,* 81 B.R. 301, 302 (E.D.Pa.1987) (citing *In re Bertoli,* 58 B.R. 992, 995 (D.N.J.1986); *In re Johns–Manville Corporation,* 39 B.R. 234, 236 (S.D.N.Y.1984)). Thus, the general rule that applies here, as with § 1292(b), is that interlocutory appeals are allowed when three requirements are satisfied: (1) a controlling question of law is involved; (2) the question is one where there is substantial ground for difference of opinion; and (3) an immediate appeal would materially advance the ultimate termination of the litigation. *See* 10 Collier on Bankruptcy ¶ 8003.03 (15th rev. ed. 2004) ("Collier on Bankruptcy"). "[T]he controlling question [of law] need not be directly related to the substance of the controversy between the parties. It may involve an order transferring or refusing to transfer an action, a stay of the action ..., *or even discovery.*" *Id.* (emphasis added) (citing 19 Moore's Federal Practice, § 203.31[3] (Matthew Bender 3d ed.)).

In this case, all three standards are met. The first and second standards are met

because the permissible scope of the bankruptcy court's construction of Fed. R. Bankr.P.2019 is plainly a controlling question of law about which there is substantial ground for difference of opinion--principally, because precedent bearing on the matter is relatively thin. Next, "[t]he courts have tended to make the 'controlling question' requirement the same as the requirement that its determination 'may materially advance the ultimate termination of the litigation.' " *See id.* But even if considered independently, it is clear that the proper filing of Rule 2019 disclosures, which are intended, *inter alia,* to ensure "complete disclosure during the business reorganization process," is essential to final confirmation of the Reorganization Plan ("the Plan") such that the third requirement is met. *See In re CF Holding Corp.,* 145 B.R. 124, 126 (Bankr.D.Conn. 1992). This issue is, therefore, suitable for interlocutory appeal.

For any or all of the above reasons—as a final order, under the collateral order doctrine, or, as an appropriate issue for interlocutory review—this Court has appellate jurisdiction over the bankruptcy court's Rule 2019 Orders.

**STANDARD OF REVIEW**

■ The proper standard of review to be applied by a district court when reviewing a ruling of a bankruptcy court is determined by the nature of the issues presented on appeal. Legal conclusions of the bankruptcy court are subject to *de novo* or plenary review by the district court. *Donaldson v. Bernstein,* 104 F.3d 547, 551 (3d Cir.1997); *Chemetron Corp. v. Jones,* 72 F.3d 341, 345 (3d Cir.1995). The factual determinations of the bankruptcy court are not to be set aside unless "clearly erroneous." *See* Fed. R. Bankr.P. 8013; *Chemetron,* 72 F.3d at 345; *In re Indian Palms Assocs., Ltd.,* 61 F.3d 197, 203 (3d

Cir.1995). On review of the factual findings of a bankruptcy court, a district court must "give due regard to the opportunity of that court to judge, first-hand, the credibility of the witnesses." *Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc.,* 57 F.3d 1215, 1223 (3d Cir. 1995). Where a matter presents mixed questions of law and fact, it is appropriate to apply the relevant standard to each component of the issue. *Chemetron,* 72 F.3d at 345.

**DISCUSSION**

**I. *Insurers' Standing***

■ Appellants argue that Insurers lack standing to participate generally in the Debtors' reorganization and that, accordingly, the Insurers had no standing to bring the Rule 2019 Compliance Motions or to litigate this appeal. Brief of Appellants in Support of Appeal ("Appellants' Supp. Mem.") at 36. In response, Appellees argue that because Rule 2019 disclosure bears directly on plan confirmation, standing to raise issues in the confirmation process is appropriate and must include standing to raise issues with respect to Rule 2019 disclosure.

■ Standing to raise issues before the bankruptcy court, and the question of whether appellees are indeed "parties in interest" under 11 U.S.C. § 1109(b), are questions of law which are reviewed *de novo.* *See ACLU–NJ v. Township of Wall,* 246 F.3d 258, 261 (3d Cir.2001); *In re Caldor, Inc.,* 2000 WL 546465, *3 (S.D.N.Y. May 3, 2000) (*rev'd* on other grounds).

■ Standing, a constitutional requirement, is a "threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Hence, a defect in

standing cannot be waived; it must be raised, either by the parties or by the court, whenever it becomes apparent, even on appeal. *Belitskus v. Pizzingrilli,* 343 F.3d 632, 639 (3d Cir.2003) (citing *Nat'l Org. for Women, Inc. v. Scheidler,* 510 U.S. 249, 255, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994)).

 Pursuant to § 1109(b), "a party in interest ... may appear and be heard on *any issue* in a case under this chapter." 11 U.S.C. § 1109(b) (emphasis added). While it is clear that party-in-interest status is not determined for all purposes at the outset of the reorganization proceeding, see *In re Pub. Serv. Co. of New Hampshire,* 88 B.R. 546, 554 (Bankr. D.N.H.1988), the basic test governing the right to be heard remains the same for all issues that may arise in the course of a case: "The test to determine whether an entity is a party in interest is 'whether the prospective party in interest has a sufficient stake in the outcome of the proceeding so as to require representation.'" *In re Torrez,* 132 B.R. 924, 934 (Bankr. E.D.Ca.1991) (quoting *Public Serv. Co.,* 88 B.R. at 551). Generally speaking, a "sufficient stake" to be considered a party-in-interest can be a pecuniary interest that is directly or adversely affected. *See, e.g., Davis v. Cox,* 356 F.3d 76, 93 (1st Cir.2004) (holding that party who has suffered pecuniarily from bankruptcy court order is a "person aggrieved" for the purpose of appeal).

 As Judge Ferguson noted, it is generally accurate to characterize a determination of standing before the bankruptcy court as a two part inquiry. Transcript of April 19, 2004 Bankruptcy Hearing ("April 19 Bankr.Trans.") at 66. First, the party seeking standing must establish that it is a party-in-interest under § 1109(b). *Id.* Second, the party seeking standing must satisfy minimum constitutional requirements. *Id.* In addition, Judge Ferguson correctly noted that there is substantial overlap between the two inquiries. *Id.* at 67. As *Collier on Bankruptcy* explains:

The doctrine of standing embraces two inquiries of relevance in the context of section 1109(b). First, it considers whether the participation of any particular party comports with the limitations of the case or controversy requirement of Article III of the Constitution. Second, it considers, as a matter "of self restraint," whether the interests of a party seeking to participate lie within the "zone of interests" protected by the particular statute or legal rule implicated in the given proceeding.

7 Collier on Bankruptcy ¶ 1109.04[4].

In the first instance, Judge Ferguson ruled that "the insurers are parties-in-interest [under 11 U.S.C. § 1109] with standing to raise issues with regard to plan confirmation." Transcript of Nov. 15, 2004 Bankruptcy Court Hearing ("Nov. 15 Bankr.Trans.") at 28; Transcript of July 26, 2004 Bankruptcy Court Hearing ("July 26 Bankr.Trans.") at 54–55; *see also* Transcript of June 7, 2004 Bankruptcy Court Hearing ("June 7 Bankr.Trans.") at 61–68 (articulating a number of reasons why the revised Plan is not "insurance neutral" and why insurers have standing to participate in the plan process); *accord* Transcript of April 21, 2004 Bankruptcy Court Hearing ("April 21 Bankr.Trans.") at 69–75.

As a general matter, Judge Ferguson noted that parties with potential responsibility to pay claims against debtors regularly have standing to participate in bankruptcy cases. June 7 Bankr.Trans. at 67–68 (citing *In re Peter DelGrande Corp.,* 138 B.R. 458, 459 (Bankr.D.N.J.1992); *In re Berkshire Foods, Inc.,* 302 B.R. 587, 588–90 (Bankr.N.D.Ill.2003); *Marcus Hook Dev. Park, Inc.,* 153 B.R. 693, 700 (Bankr.W.D.Pa.1993)). In this case, Insur-

ers' standing is appropriate with respect to plan confirmation, at minimum, because the plan is not insurance neutral: The principal source of funding for the Plan Trust (and distributions to asbestos claimants) is insurance proceeds.[1]

In a hearing on June 7, 2004, Judge Ferguson reviewed a revised Plan and re-iterated several, more detailed, independent grounds upon which the Insurers maintained standing with respect to plan confirmation. *See* June 7 Bankr.Trans. at 61–67. Among the many reasons proffered by Judge Ferguson, is the fact that Section 11.6 of the Plan (the version at issue on June 7, 2004) impacts the rights of Insurers by limiting any contribution claim to an offset claim against the Plan Trust (rather than, as Insurers point out, a claim against a settling insurer).[2] *See* June 7 Bankr.Trans. at 66. But even more important than any specific provisions of the *current* plan, is the fact that Plan language bearing on the interplay between the bankruptcy case and the insurance coverage litigation has changed several times since Judge Ferguson's June 7 ruling on Insurers' standing—and, as a practical matter, the Plan is subject to change in ways that impact the Insurers at any time.

Neither Appellants nor any other party has appealed Judge Ferguson's April or June decisions finding that Insurers are parties-in-interest and have standing with respect to plan confirmation. As discussed above, standing is a jurisdictional requirement which remains open to review at all stages of the litigation. Appellants' arguments that "the Plan does nothing to directly affect the liability of the Debtors' insurers" and that the "insurers are peripheral parties because insurance coverage issues will be resolved in another case and another forum," however, are conclusory and fail to address the aforementioned reasons why the Plan does, directly and indirectly, affect the Insurers' interests in ways that are not coextensive with their ability to participate in coverage litigation. *See* Appellants' Supp. Mem. at 39, 41.

For the above reasons, it is clear to the Court that Appellees are parties-in-interest under § 1109(b) with respect to plan confirmation, and for the very same reasons, they are also parties–in-interest with

---

1. As Judge Ferguson reasoned,
 > we have a threatened injury to the insurers' legal, that is contractual, and financial interests as a result of the proposed Chapter 11 plan. Also a favorable decision, such as amendment of the plan or denial of confirmation could redress that injury. . . .
 > Accordingly, and based largely on the breadth of the language in the plan and the broad scope of 1109, the court finds that the insurers meet both Section 1109 and the general Constitutional standards to have standing to be heard with regard to all issues pertinent to plan confirmation.

 April 19 Bankr.Trans. at 74. Judge Ferguson limited this ruling to "the plan in its current form." In response, the Plan was revised and presented to the court as "insurance neutral," and it was then argued that, in its new form, Insurers should no longer have standing with respect to confirmation.

2. Other sections of the Plan discussed by Judge Ferguson which implicate the interests of the Appellees are § 7.2, which potentially changes the party with whom Insurers would have to litigate against in personal injury claims and § 4.1(j), which states that

 > [e]ach holder of an Unsecured Asbestos Personal injury Claim shall be deemed to have assigned to the Plan Trust, and the Plan Trustee shall be deemed such holder's sole attorney in fact, as may be appropriate, to prosecute, at the Plan Trustee's discretion . . . any Direct Action.

 Reorganization Plan § 4.1(j). As Judge Ferguson noted, § 4.1(j) arguably implicates New Jersey law which prohibits the assignability of prejudgment tort claims, as well as 11 U.S.C. § 524(g) and § 1129–all issues which Insurers, as the principal source of funding for the Plan Trust, should have standing to explore.

respect to Rule 2019 disclosure. As Judge Ferguson found, the information sought in the Rule 2019 Compliance Order "is vitally important . . . for the confirmation because it may have a direct bearing on both good faith and the fairness of the plan's classification system." July 26 Bankr.Trans. at 54–55. That the Insurers' stake in plan confirmation includes a stake in the fundamental fairness of the Plan cannot be seriously challenged—the question is whether Rule 2019 compliance bears on the fundamental fairness of the Plan.

■ Because the Court agrees with Judge Ferguson's reasoning—based on the facts before the bankruptcy court— that the information sought in the Rule 2019 disclosures, does indeed bear on the overall fairness of this Plan, it is clear that Insurers have standing to raise these Rule 2019 compliance issues. See Appellee Century's Opp. Mem. at 3–5, 11–24 for a recitation of the pertinent facts before the bankruptcy court in consideration of Century's Rule 2019 Motion. Of particular relevance, is evidence that the Motley Rice and Weitz & Luxenberg firms, which

together purport to "speak for" over 75 percent of all asbestos claimants against Congoleum, may not in fact "represent" individual claimants in the traditional sense of an attorney-client relationship, but rather, they represent other attorneys who, in turn, represent individual claimants. See July 6 Svirsky Decl., Ex. A (July 24, 2003 Rice Dep.) at 46–47, 405–06 (Bankr.Dkt. No. 922); Id. Ex. B (June 16, 2004 Rice Dep.) at 171 (Bankr.Dkt. No. 922).[3] The totality of the facts before the bankruptcy court suggest the opportunity for abuse of fee sharing relationships, involving attorneys in connection with the prepetition process, to the end of conferring preferential security interests on Appellants' clients. To the extent that these relationships are inextricable from the overall fairness of the reorganization plan, the Insurers are parties-in-interest under § 1109 with respect to Rule 2019 disclosure.[4]

■ Of course, as discussed above, minimum constitutional and prudential requirements of standing still apply to parties-in-interest in a bankruptcy case.[5] The

---

**3.** Joseph Rice, Esq., a principal at the Motley Rice firm who is integrally involved with this Chapter 11 proceeding, when asked whether he has "literally undertaken to represent another law firm rather than the asbestos claimants," testified that "I have arrangements where I'm a consultant to law firms," id., and that "there are firms that I have a relationship with that all I do is negotiate on behalf of their law firms with various defendants, and subject to their ultimate review of the claim." July 6 Svirsky Decl., Ex. A (July 24, 2003 Rice Dep.) at 59–60 (Bankr.Dkt. No. 922). Mr. Rice implies that his association with other Plaintiff's firms is that of "co–counsel" or "joint counsel." Id. at 57–58.

**4.** Appellants' reliance on *In re Combustion Engineering*, which sets forth the standard for appellate standing, is inapposite. Appellants' Reply Mem. at 4. In that case, the Third Circuit distinguishes the "restrictive approach to bankruptcy appellate standing," character-

ized by application of the "persons aggrieved" standard, "with the broad right of participation in the early stages of a bankruptcy proceeding," during which " § 1109(b) has been construed to create a broad right of participation in Chapter 11 cases." *In re Combustion Eng'g*, 391 F.3d 190, 214 n. 21 (3d Cir.2004). The "persons aggrieved" standard does not apply to parties such as Appellee Insurers, who seek to defend a favorable ruling on appeal-these parties need not meet standing requirements.

**5.** Although the bankruptcy court is not an Article III court, its jurisdiction is similarly limited by the constitutional standing requirements. *In re Amoskeag Bank Shares, Inc.*, 239 B.R. 653, 657 (D.N.H.1998) (citing *In re Kilen*, 129 B.R. 538, 542 (Bankr.N.D.Ill.1991)). This conclusion follows from the fact that the district court has original jurisdiction in cases arising under Title 11, but may refer these

doctrine of Article III standing requires federal courts to make sure concrete legal issues are presented by a plaintiff with a particularized injury in fact traceable to the conduct of the defendant which is likely to be redressed by the relief sought. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). In this case, it is clear that Insurers had constitutional standing to bring the Rule 2019 Motion. They alleged an injury in fact: It is the unfairness of a plan which binds them contractually and which directly impacts their financial interests, unfairness which is traceable to conflicts of interest among Creditors' counsel, allegedly arising from fee sharing and co-counsel relationships and their bearing on the Plan's classification system. The alleged injury is redressable by the bankruptcy court through a favorable decision, such as amendment of the Plan or denial of confirmation, which would be made possible after review of the Rule 2019 disclosure sought. Insurers have thus met the requirements for Article III standing to raise the issues covered in the Rule 2019 Compliance Order before the bankruptcy court.

Appellants argue further, however, that prudential limitations on standing should bar Insurers from bringing their Rule 2019 Motion. Appellants' Supp. Mem. at 40. Apart from its minimum constitutional mandate, the Supreme Court recognizes other limits " . . . on the class of persons who may invoke the courts' decisional remedial powers." *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). These prudential limitations are self-imposed rules of judicial restraint which militate against standing, they principally concern whether the liti-

gant: (1) asserts the rights and interests of a third party and not his or her own, (2) presents a claim arguably falling outside the zone of interests protected by the specific law invoked, or (3) advances abstract questions of wide public significance essentially amounting to generalized grievances more appropriately addressed to the representative branches. *Benjamin v. Aroostook Medical Ctr., Inc.*, 57 F.3d 101, 104 (1st Cir.1995).

Here, Appellants argue that Insurers have leveled a generalized grievance against prepackaged bankruptcies under 11 U.S.C. § 524(g). Appellants' Supp. Mem. at 42. Yet, the concern of Insurers with the fairness of a plan that bears a substantial financial impact on them cannot be considered a grievance that "is shared in substantially equal measure by all or a large class of citizens." *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Surely, the mere fact that Insurers' Rule 2019 Motion was raised in the context of a pre-packaged bankruptcy does not mean that the Motion concerns the Chapter 11 reorganization process as a whole, rather than the specific, unlawful practices alleged therein. If the Court agreed with Appellants' assertion, then any motion, on any issue, in any bankruptcy case, could be described as a generalized grievance against something.

Appellants' additional assertion that Insurers are outside the zone of interests of Rule 2019, *see* Appellants' Supp. Mem. at 42, is similarly unconvincing. Insofar as Rule 2019 seeks to ensure "complete disclosure during the business reorganization process," and insofar as the Insurers' motion is based on equitable grounds related to the intrinsic fairness of the reorganization plan, the Insurers have brought them-

cases to the bankruptcy court. *Id.* (citing 11 U.S.C. §§ 157, 1334). The district court cannot delegate a case to the bankruptcy court

which the district court itself cannot hear. *Id.*

selves "within the zone of interests which the Bankruptcy Act seeks to protect and to regulate" *See CF Holding Corp.*, 145 B.R. at 126. *See also In re Colony Hill Assocs.*, 111 F.3d 269, 273 (2d Cir.1997) (finding that unsuccessful bidder had standing to challenge "intrinsic fairness" of bankruptcy sale and good faith status of purchaser); *In re Harwald Co.*, 497 F.2d 443, 444 (7th Cir.1974) (noting that unsuccessful bidders may challenge sale "on equitable grounds related to the intrinsic structure of the sale"); *In re Time Sales Fin. Corp.*, 445 F.2d 385 (3rd Cir.1971) (supporting same proposition by implication).

For all of the above reasons, Insurers have standing to raise the issues with respect to Rule 2019 compliance that are the subject of the bankruptcy court's Rule 2019 Compliance Order. The balance of this Opinion will consider the merits of the appeal.

## II. *Jurisdiction of the Bankruptcy Court to Issue the Rule 2019 Compliance Order*

 Appellants contend that the Rule 2019 Compliance Order was not within the subject matter jurisdiction of the bankruptcy court. The question of subject matter jurisdiction is reviewed *de novo*. *In re Wolverine Radio, Co.*, 930 F.2d 1132, 1138 (6th Cir.1991); *In re Castlerock Properties*, 781 F.2d 159, 161 (9th Cir. 1986).

The bankruptcy court's jurisdiction over matters involving nondebtors is delineated in 28 U.S.C. § 1334. Section 1334 enumerates four types of matters over which the bankruptcy courts have jurisdiction: "(1) cases under title 11, (2) proceeding[s] arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11."

*In re Combustion Eng'g, Inc.*, 391 F.3d 190, 225–226 (3d Cir.2004).

 "Cases under title 11, proceedings arising under title 11, and proceedings arising in a case under title 11 are referred to as 'core' proceedings; whereas proceedings 'related to' a case under title 11 are referred to as 'non-core' proceedings." *Id.* "Proceedings 'related to' a title 11 case include ... suits between third parties that conceivably may have an effect on the bankruptcy estate." *Id.* (citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n. 5, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995)). " '[C]ases under Title 11,' as used in 28 U.S.C. § 1334(a), 'refers merely to the bankruptcy petition itself.' " *Id.* (citations omitted). "The term 'proceeding,' on the other hand, as used in 28 U.S.C. § 1334(b), refers 'to the steps within the 'case' and to any subaction within the case that may raise a disputed or litigated matter.' " *Id.* (citations omitted) "Put differently, 'anything that occurs within a case is a proceeding,' including all 'controversies, adversary proceedings, contested matters, suits, actions or disputes.' " *Id.* (citations omitted).

 Appellants argue that the bankruptcy court lacks "related to" jurisdiction over fee arrangements-contracts between tort claimants, claimants' counsel, and any co-counsel referring law firms-which arose outside the context of these bankruptcy proceedings, namely, in the context of personal injury actions in states all around the country. In this case, however, the core question with respect to subject matter jurisdiction is whether construction of Rule 2019 is within the bankruptcy court's "arising under" jurisdiction. It is well settled that construction and application of Rule 2019 is within the "core" jurisdiction of the bankruptcy court because it involves the "administration of the estate" which is an explicitly enumerated proceeding under 28

U.S.C. § 157(b)(2)(A). *See In re Lambright*, 125 B.R. 733, 733 (Bankr.N.D.Tex. 1991) (holding that "the application ... and the construction of the Bankruptcy Code raise[s] core matters over which the bankruptcy court has jurisdiction"); *see also Sterling Optical Corp.*, 302 B.R. 792, 801 (Bankr.S.D.N.Y.2003) ("A claim 'arises in' bankruptcy if, by its very nature, the claim can only be brought in a bankruptcy action, because it has no existence outside of bankruptcy.... Matters involving the enforcement or construction of a bankruptcy court order are in this category.") (citation omitted).

The problem with Appellants' argument is that, even if the court lacks "related to" jurisdiction over the substance of fee sharing and co-counsel arrangements, to the extent that these contracts were leveraged, or in any way affected the rights of Creditors in this bankruptcy, the bankruptcy court has "arising under" jurisdiction to order relevant disclosure. The fact that the fee sharing and co-counsel relationships at issue are the fruits of contracts between nondebtors, an issue much belabored by Appellants, is beside the point: Under circumstances where fee sharing and referral relationships have potentially affected the priority of creditors in the bankruptcy, these relationships can have a serious impact upon the handling of the estate. A case in point, the Third Circuit's recent decision *In re Combustion Engineering* stresses the importance of "good faith" in the context of Chapter 11 reorganizations:

As a condition of plan confirmation, a debtor must propose a plan of reorganization "in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). Courts and commentators have recognized the good faith requirement provides an additional check on a debtor's intentional impairment of claims.... Although the Code does not define "good faith" in the context of § 1129(a)(3), we have stated that "[f]or purposes of determining good faith under section 1129(a)(3) ... the important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code."

391 F.3d at 246–247 (citing, *inter alia, In re PWS Holding Corp.*, 228 F.3d 224, 242.(3d Cir.2000)).

■■■ Regulation of professional responsibility with respect to creditors' or debtors' counsel, moreover, is squarely within the purview of the bankruptcy court regardless of whether third party, nondebtors are involved.[6] *See, e.g., In re Imperial "400" Nat., Inc.*, 481 F.2d 41, 55 (3d Cir.1973) ("[I]t is apparent that the same concerns which are embodied in the Code of Professional Responsibility are also present in the statutory scheme governing corporate reorganizations under the Bankruptcy laws."); *Galam v. Carmel*, 249 F.3d 832, 838 (9th Cir.2001) (attorney appearing in federal court is an officer of the court, and that court must judge the attorney's conduct); *In re Berger McGill, Inc.*, 242 B.R. 413, 418 (Bankr.S.D.Ohio 1999) (applying state ethics rules with respect to

---

6. The bankruptcy court's jurisdiction with respect to professional responsibility even extends as far as non-attorney, third party professionals, who are required to adhere to ethical obligations imposed not only under federal law but under any incorporated ethical standards found in state law. 8 Collier on Bankruptcy ¶ 8.01[4][a]. Attorneys ap-

pearing before the bankruptcy court are ultimately responsible for the ethical obligations of these third parties insofar as they have filed applications on behalf of parties seeking approval for the hire and payment of these nonattorney professionals—*i.e.,* accountants, investment bankers or even auctioneers. *Id.*

conflicts of interest); *In re Soulisak*, 227 B.R. 77, 80 (Bankr.E.D.Va.1998) (citing 1 Collier on Bankruptcy ¶ 8.02[2]) (When appearing before the bankruptcy courts attorneys are bound by the state codes and rules imposed by the state bar associations and the highest courts of the states where they practice.); *In re Printing Dimensions, Inc.*, 153 B.R. 715 (Bankr.D.Md. 1993) ("The District Court applies the Rules of Professional Conduct as they have been adopted by the Maryland Court of Appeals."); *In re Doors and More, Inc.*, 127 B.R. 1001, 1002 n. 2 (Bankr.E.D.Mich. 1991) (applying state ethics rules with respect to attorney's fees). "Not only are state ethical laws imposed upon professionals in the bankruptcy context, but the Bankruptcy Code and Federal Rules of Bankruptcy Procedure contain specific references and directives imposing additional ethical obligations upon attorneys and other professionals." 8 Collier on Bankruptcy ¶ 8.02.

■ At oral argument, Appellants stressed that the referral arrangements and other contracts covered by the Rule 2019 Compliance Order are governed by the laws and subject to the ethical codes of a panoply of states other than New Jersey. For this reason, they suggest, the bankruptcy court cannot have subject matter jurisdiction to order disclosure of these relationships. Again, Appellants argument is beside the point: While these facts may raise choice of law issues, they do not abrogate the power of the bankruptcy court to consider professional responsibili-

ty issues that fall within its "arising under" jurisdiction. As Judge Ferguson noted in rejecting Appellants' Motions for Reconsideration: To cast a ballot in a bankruptcy case is to appear before the bankruptcy court, thus even the "non bankruptcy counsel, who have not appeared in a representational capacity," but who submitted ballots on behalf of their clients, have appeared in this bankruptcy case. *See* Bankr.Trans. Oct. 5, 2004 at 7.[7]

Skirting the issue of professional responsibility, Appellants draw the Court's attention to *In re Johns–Manville Corp.*, 68 B.R. 618, 632 (Bankr.S.D.N.Y.1986). In that case, Judge Lifland held that the terms of a contingency fee arrangement between an individual asbestos claimant and his or her attorney were not subject to the approval of the bankruptcy court to satisfy the plan confirmation requirement of 11 U.S.C. § 1129(a)(4). *Johns–Manville* reasons that

> [t]he objectors here seek to raise a putative controversy between third parties ... which does not effect the administration of the Debtor's estate. The fee arrangement between a claimant and his or her attorney is immaterial to these reorganization proceedings. As such, these objections raise collateral disputes which this court is not empowered to rule upon.

68 B.R. at 632 (citing *In re Paso Del Norte Oil Co.*, 755 F.2d 421 (5th Cir.1985); *In re Shirley Duke Assocs.*, 611 F.2d 15 (2d Cir.1979); *First State Bank & Trust Co. v.*

---

7. In her July 26 decision on this issue, Judge Ferguson reasoned that

> [members of the Pre–Petition Committee, who have not participated in the bankruptcy case since the pre-petition stage] intend to submit ballots in favor of the plan on behalf of their clients. And the fact that these master ballots may have been drafted before the commencement of the case does

not change the fact that to cast a ballot is to participate in the case and become subject to the requirements of 2019. To hold otherwise would undermine one of the purposes of Rule 2019, that is, to monitor the committees that are not appointed under Section 1102 or 1114.

July 26 Bankr.Trans. at 51.

*Sand Springs State Bank of Oklahoma,* 528 F.2d 350 (10th Cir.1976)).

Unlike *Johns–Manville,* where the disputed fee arrangement may have violated rules of professional responsibility but otherwise had no bearing on the overall fairness of the plan, in this case, questions of professional responsibility qualify as "pertinent facts and circumstances in connection with the employment [of counsel]," because they "may have a direct bearing on both good faith and the fairness of the plan's classification system." Fed. R. Bankr.P.2019(a); July 26 Bankr.Trans. at 54–55. Besides this fact, the Third Circuit has taken a position emphasizing different values than Judge Lifland: In *Combustion Engineering,* the court affirmed its commitment to enforce the "good faith" requirement in § 1129, which is the same section (different subpart) at issue in *Johns–Manville. See Combustion Eng'g,* 391 F.3d at 246–247.

For all of the above reasons, in this case, the particular issues of professional responsibility which the Rule 2019 Compliance Order seeks to address are inextricably intertwined with the overall fairness of the Plan and therefore are within the core subject matter jurisdiction of the bankruptcy court.

### III. *The Permissible Scope of Rule 2019 Orders*

■ Having resolved the question of subject matter jurisdiction, the next issue on appeal is the permissible scope of the bankruptcy court's Rule 2019 Compliance Order. Rule 2019 requires, in relevant part, that

> every entity or committee representing more than one creditor ... unless otherwise directed by the court ... shall file a verified statement setting forth ... (3) *a recital of the pertinent facts and circumstances in connection with the em-*

*ployment of the entity or indenture trustee,* and, in the case of a committee, the name or names of the entity or entities at whose instance, directly or indirectly, the employment was arranged or the committee was organized or agreed to act;.... The statement shall include a copy of the instrument, if any, whereby the entity, committee, or indenture trustee is empowered to act on behalf of creditors or equity security holders....

Fed. R. Bankr.P.2019(a) (emphasis added). *Collier on Bankruptcy* describes the purpose of Rule 2019 as follows:

> [T]he need [in Chapters 9 and 11] for policing creditor groups and those who act on their behalf is greater than under other relief chapters. *The rule is part of the disclosure scheme of the Bankruptcy Code and is designed to foster the goal of reorganization plans which deal fairly with creditors and which are arrived at openly.*

9 Collier on Bankruptcy ¶ 2019.01 (emphasis added) (citing 13A Collier on Bankruptcy ¶ 10–211.04).

Other courts have described Rule 2019 as a "disclosure provision" designed to ensure that lawyers involved in the Chapter 11 reorganization process adhere to certain ethical standards and approach all reorganization related matters openly and subject to the scrutiny of the court. *See, e.g., In re the Muralo Co. Inc.,* 295 B.R. 512, 524 (Bankr.D.N.J.2003) (Rule 2019 "is designed to foster the goal of reorganization plans which deal fairly with creditors and which are arrived at openly."); *In re Oklahoma P.A.C.,* 122 B.R. 387, 392–393 (Bankr.D.Ariz.1990) (same); *CF Holding,* 145 B.R. at 126 (The "purpose of Rule 2019 is to further the Bankruptcy Code's goal of complete disclosure during the business reorganization process."); *In re F & C Int'l, Inc.,* 1994 Bankr.LEXIS 274, *8

(Bankr.S.D.Ohio 1994) (Absent compliance with Rule 2019, there is a danger that "parties purporting to act on another's behalf may not be authorized to do so and may receive distributions to which they are not entitled.").

In furtherance of the point, Appellee Century cites the words of then future Supreme Court Justice William O. Douglas, speaking for an SEC committee in 1937, for the proposition that

> Rule 2019 is designed to ensure that "the inside group" does not manipulate a prepetition committee to "secure a dominant position in the reorganization" and capture "the emoluments of control." Where, as here, the "non-disclosure" of Rule 2019 information affects the solicitation and voting methods, Justice Douglas cautioned that it "must be controlled, so that [stakeholders] may be assured of an honest and complete portrayal of all material facts."

Appellee Century Opp. Mem. at 29 (citing Report on the Study and Investigation of the Work, Activities, Personnel and Functions of Protective and Reorganization Committees, Part I: Strategy and Techniques of Protective and Reorganization Committees (1937) at 876–7, 898; also citing *Leiman v. Guttman*, 336 U.S. 1, 6–7, 69 S.Ct. 371, 93 L.Ed. 453 (1949)).

In this case, the challenged elements of Judge Ferguson's Rule 2019 Order require Appellants to include "a list and detailed explanation of any type of co-counsel, consultant or fee sharing relationships and arrangements whatsoever, in connection with this bankruptcy case," and require the "attachment of copies of any documents that were signed in conjunction with creating that relationship or arrangement." Rule 2019 Compliance Order at 3. Judge Ferguson described the factual basis for ordering these disclosures as "unprecedented," and found, *inter alia*, that many of the creditors "have never seen a copy of the disclosure statement and, for all the court knows, have absolutely no idea how their claim will be treated under the plan." July 26 Bankr.Trans. at 53–54; *see also, supra,* Section I, pp. 11–12 discussing, in detail, the relevant facts before the bankruptcy court. This Court has been offered no reason to find error in Judge Ferguson's factual findings.

As a matter of law, Appellants argue that Judge Ferguson's Rule 2019 Compliance Order "went far beyond the scope of Rule 2019 and exceeded the limited purpose served by Rule 2019." Appellants' Supp. Mem. at 13. More specifically, they argue that the sole purpose of Rule 2019 is to ensure that entities claiming to represent multiple creditors possess the requisite authorization; that Rule 2019 limits the bankruptcy court to an examination of the "representation provision" of specified retention agreements; and that the bankruptcy court's " 'unprecedented' extension of Rule 2019" is inconsistent with "the more restrained approach adopted by other bankruptcy courts in this circuit." *Id.* at 13, 17, 19.

■■■ These arguments, however strenuous, are untenable. Section 105(a) of the Bankruptcy Code gives the court the power to "issue any order … that is necessary or appropriate to carry out the provisions of this title [and to] mak[e] any determination necessary or appropriate to enforce or implement court orders or rules…." 11 U.S.C. § 105(a); *In re Dennis*, 230 B.R. 244, 256 (Bankr.D.N.J.1999). Discretionary matters, particularly a bankruptcy court's exercise of discretion under § 105(a), are reviewable on appeal only under the customary abuse of discretion standard. *See In re Hechinger Inv. Co. of Delaware,* 298 F.3d 219, 224, 228 (3d Cir.2002) (reviewing bankruptcy court's exercise of its § 105(a) powers un-

der abuse of discretion standard and finding, in that case, no abuse of discretion); *In re Cybridge Corp.*, 312 B.R. 262, 273 (D.N.J.2004) (same).

Here, the Court is satisfied with Judge Ferguson's determination that fee sharing, co–counsel and referral relationships (and the potential conflicts of interest that may arise therefrom) are indeed "pertinent facts and circumstances in connection with the employment of the entity." Fed. R. Bankr.P.2019(a). The precise nature of these relationships falls well within the literal language of the Rule as well as the Judge's discretion to apply the rule in these circumstances.

■ Insofar as the core purpose of Rule 2019 is to ensure that reorganization plans deal fairly with all creditors and are arrived at openly, a characterization advanced in Appellants' Reply Mem. at 5, Judge Ferguson's application of the Rule echos the concerns of the Third Circuit in *Combustion Engineering:* Discussing the role of § 1126(e), and remanding the issue to the district court for further consideration, *Combustion Engineering* explained that

> Section 1126(e) is often used to monitor the conduct of creditors who seek to gain an untoward advantage over others in the bankruptcy process. In interpreting the predecessor provision to § 1126(e), § 203 of the Bankruptcy Act, the Supreme Court noted: ... "Bad faith was to be attributed to claimants who opposed a plan for a time until they were 'bought off'; those who 'refused to vote in favor of a plan unless ... given some particular preferential advantage.' " ... The [Supreme Court concluded § 203 was meant to apply to creditors] "whose selfish purpose was to obstruct a fair and feasible reorganization in the hope that someone would pay them more than the ratable equivalent

of their proportionate part of the bankrupt assets."

391 F.3d at 247, n. 68 (citing *Young v. Higbee Co.*, 324 U.S. 204, 211 n. 10, 65 S.Ct. 594, 89 L.Ed. 890 (1945); and also citing *Revision of the Bankruptcy Act: Hearings Before the Committee on the Judiciary of the House of Representatives*, 75th Cong., 1st Sess. on H.R. 6439, Serial 9, at 180–82) (other citations omitted). *See also Clarke v. Rogers*, 228 U.S. 534, 33 S.Ct. 587, 57 L.Ed. 953 (1913) ("Equality between creditors is necessarily the ultimate aim of the bankrupt[cy] law, and to obtain it we must regard the essential nature of transactions[.]").

As *Combustion Engineering* further emphasizes: "Only after analyzing the totality of circumstances surrounding a reorganization plan can the court exercise the 'informed, independent judgment' which is an essential prerequisite for confirmation of a plan." 391 F.3d at 242 n. 55 (citing *Am. United Mut. Life Ins. Co. v. Avon Park*, 311 U.S. 138, 61 S.Ct. 157, 85 L.Ed. 91 (1940)). "Where such investigation discloses the existence of unfair dealing, a breach of fiduciary obligations, profiting from a trust, [or] special benefits for the reorganizers ... the court has ample power to adjust the remedy to meet the need." *Id.* In short, *Combustion Engineering* supports Judge Ferguson's application of Rule 2019 to prevent conflicts of interest among Creditors' counsel from undermining the fairness of the Plan, bringing to bear the values of good faith and fairness in the reorganization process that pervade the bankruptcy code.

■ Finally, Appellants propose that even if Judge Ferguson's Order is found to be within the constraints of Rule 2019(a), it goes too far in terms of its "sanctions for non-compliance," which are enumerated in Rule 2019(b). In particular, Appellants take issue with the ordered disclosure of

whole documents creating fee sharing or co-counsel relationships, taking the position that only the "representation provisions" of such documents are delineated in 2019(b) and that nothing further is relevant.

As discussed in detail above, however, questions of good faith and professional responsibility are highly pertinent areas for disclosure in the context of this reorganization. Indeed, Rule 2019(b) presents itself as a particularly appropriate source of authority for the Rule 2019 Compliance Order since it specifically provides that "the court may (1) determine whether there has been a failure to comply with the provisions of [2019](a) ... *or with any other applicable law regulating the activities and personnel of any entity ....* or any other impropriety in connection with any solicitation."

Rule 2019(b) states, further, that the bankruptcy court may examine "any representation provision," but also, more broadly, "any claim or interest acquired by any entity or committee in contemplation or in the course of a case under the Code and [the court may] grant appropriate relief." The Third Circuit has read similar rules broadly in cases such as this one, where the entire solicitation and voting process was conducted through a small group of law firms who collectively represent hundreds of thousands of individual claimants. *See Combustion Eng'g,* 391 F.3d at 245 n. 66 ("Where the voting process is managed almost entirely by proxy, it is reasonable to require a valid power of attorney for each ballot" even where Rule 9012(c) only requires a power of attorney for each firm.). Appellants' crabbed interpretation of 2019(b) is at odds with purpose and text of Rule 2019 as a whole and the tenor of *Combustion Engineering,* each of which supports the extent of Judge Ferguson's Order.

There is simply no reason why Rule 2019, which seeks to ensure openness and good faith participation at a relatively early stage of a reorganization, should be construed more narrowly than the later stage provisions at issue in *Combustion Engineering,* *e.g.,* §§ 1126(e) and 1129(a)(3). In this case, Rule 2019 was applied consistently with its language and its purpose to assure equality of distribution among creditors, to root out conflicts of interest, and to secure overall fairness of the Plan. For these reasons, Judge Ferguson's construction and application of Rules 2019(a) and (b) was well within her discretion. Indeed, it is precisely the decision which this Court would have made if the issue had been presented to it in the first instance.

## IV. *Disclosure of "Confidential Information"*

■ Appellants argue that the bankruptcy court erred in ordering the disclosure of proprietary and confidential information without in camera review. Appellants' Supp. Mem. at 23. When the issue was before Judge Ferguson she held that the Rule 2019 Compliance Order does not implicate any of Appellants' privileged or confidential information. Oct 5. Bankr.Trans. at 11–12.

The Third Circuit has ruled that "[i]n the absence of unusual circumstances, the fact of a retainer, the identity of the client, the conditions of employment and the amount of the fee do not come within the privilege of the attorney-client relationship." *In re Semel,* 411 F.2d 195, 197 (3d Cir.1969) (citations omitted). But Appellants cite *Smith v. BIC Corp.,* 869 F.2d 194, 199 (3d Cir.1989) for the proposition that "private entities' proprietary and confidential information may be withheld where 'good cause' exists and the informa-

tion sought is considered irrelevant for dissemination."

While Appellants may believe the information sought in the Rule 2019 Compliance Order is "irrelevant," the better part of this opinion explains why that is not the case. Not only are there strong policy and statutory reasons why the fee arrangements between attorneys practicing before the bankruptcy courts cannot be privileged, see, *e.g., In re Michaelson,* 511 F.2d 882, 888–89 (9th Cir.1975), there is ample evidence in this particular case, that suggests these facts are relevant, and indeed, critical. *See, e.g.,* Appellee Century Opp. Mem. at 4 (citing Rule 2019 disclosures to date—by firms not appealing Judge Ferguson's Order—which reveal that some attorneys with an inventory of claims in this bankruptcy share as much as one third of their fees with members of the prepetition committee, who are also Appellants in this case); *see also Bowling v. Pfizer, Inc.,* 102 F.3d 777, 781 n. 3 (6th Cir.1996) (noting that, in that case, "[fee] agreements are only 'irrelevant' because the settlement has already been approved" and that "[t]hese agreements should certainly raise questions at the settlement approval stage [because of] .... [t]he risk that counsel has in some way been 'bought off' and provided with a significant incentive to not represent the class's interest....").

 Appellants' request for in camera review, moreover, must be considered against the backdrop of 11 U.S.C. § 107, which mandates that "paper[s] filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination." *See also In re Hemple,* 295 B.R. 200, 202 (Bankr.D.Vt. 2003) (holding that § 107 applies with equal force to a settlement agreement involving a nondebtor because there is no public policy reason for keeping such records confidential).

In this case, Appellants' claims are decidedly uncompelling, particularly in light of the fact, noted by Judge Ferguson, that "[s]o many of the other parties in this case have already complied with this Court's Order it's difficult to imagine a significant competitive disadvantage brought about by merely disclosing a referral fee." Oct 5 Bankr.Trans. at 11–12. Section 107(b)'s limited exception to § 107(a) for "trade secret[s] or confidential research, development, or commercial information" cannot apply in circumstances, such as these, in which the Appellants have not met their burden of showing any reason why their referral fee arrangements qualify for special treatment.

## CONCLUSION

For the above reasons, all four appeals of Judge Ferguson's Rule 2019 Compliance Order and subsequent Orders denying amendment and reconsideration are dismissed. All four Orders of the bankruptcy court are affirmed in an Order accompanying this Opinion and dated the same.