*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 09a0041p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

In re:  TRAILER SOURCE, INC.,

*Debtor.*

——————————————————————

HYUNDAI TRANSLEAD, INC.,

*Appellee,*

*v.*

JACKSON TRUCK & TRAILER REPAIR, INC.;
JAMES A. HARRELL; RALEIGH J. WILLIAMS;
MARK LAZARUS,

*Appellants.*

Nos. 07-5584/5891

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 06-00573—Aleta Arthur Trauger, District Judge.

Argued:  June 5, 2008

Decided and Filed:  February 6, 2009

Before:  MERRITT, MOORE, and ROGERS, Circuit Judges.

————————————

**COUNSEL**

**ARGUED:**  John C. Hayworth, WALKER, TIPPS & MALONE, Nashville, Tennessee, for Appellants.  Colin W. Wied, C.W. WIED PROFESSIONAL CORP., San Diego, California, for Appellee.  **ON BRIEF:**  John C. Hayworth, John L. Farringer IV, WALKER, TIPPS & MALONE, Nashville, Tennessee, Paul G. Jennings, BASS, BERRY & SIMS, Nashville, Tennessee, for Appellants.  Colin W. Wied, C.W. WIED PROFESSIONAL CORP., San Diego, California, James E. Bailey III, FARRIS, MATHEWS, BRANAN, BOBANGO, HELLEN & DUNLAP, Memphis, Tennessee, for Appellee.

MOORE, J., delivered the opinion of the court, in which MERRITT, J. joined. ROGERS, J. (pp. 24-36), delivered a separate dissenting opinion.

1

———————————

**OPINION**

———————————

KAREN NELSON MOORE, Circuit Judge.  In this bankruptcy case, Appellants Jackson Truck & Trailer Repair, Inc., James A. Harrell, Raleigh J. Williams, and Mark Lazarus (collectively "the JT&T parties") appeal the district court's order granting Appellee Hyundai Translead, Inc. ("Hyundai") derivative standing to bring an action on behalf of the bankruptcy estate to recover certain assets that Hyundai alleges were fraudulently transferred from the debtor Trailer Source, Inc., to the JT&T parties.  We granted permission for an interlocutory appeal on the question of whether a creditor may be granted derivative standing to bring an action pursuant to 11 U.S.C. §§ 544(b) and 550(a) on behalf of the bankruptcy estate for avoidance of fraudulent or preferential transfers in light of the Supreme Court's decision in *Hartford Underwriters Insurance Co. v. Union Planters Bank, N.A.*, 530 U.S. 1 (2000).  The JT&T parties also appeal the district court's order granting Hyundai relief from the automatic stay so that it may proceed in a separate district-court action asserting fraudulent-transfer claims against the JT&T parties to recover the assets allegedly transferred from Trailer Source.  The district court reversed contrary orders by the bankruptcy court. Hyundai argues that the JT&T parties lack prudential appellate standing to pursue this appeal.  For the reasons explained below, we conclude that the JT&T parties have appellate standing to pursue this appeal; we **AFFIRM** the district court's ruling granting Hyundai derivative standing; and we **REVERSE** the district court's grant of stay relief to Hyundai.

## I.  BACKGROUND[1]

Hyundai is a manufacturer of semi-truck trailers.  In 2000, Hyundai sold a large quantity of trailers to Southern Trailer & Equipment Sales, Inc. ("Southern Trailer"), a trailer dealership in which appellants James A. Harrell ("Harrell") and Raleigh Williams ("Williams") owned a majority interest.  Harrell and Williams also owned a majority interest in two other dealerships:  appellant Jackson Truck & Trailer Repair, Inc.

---

[1]The description of the factual background that follows is drawn largely from the district court's opinion, which is consistent with the parties' statements of facts in their briefs on appeal.

("Jackson Truck & Trailer"), and the debtor in this case, Trailer Source, Inc. ("Trailer Source").[2]

In 2002, Hyundai filed a civil action in California state court against the JT&T parties, Southern Trailer, and Trailer Source. Hyundai alleged that it had delivered more than $44 million in trailers to Southern Trailer but had received only $26 million in payment. Hyundai alleged that there were fraudulent conveyances of trailers from Southern Trailer to the two other dealerships that otherwise could have satisfied Southern Trailer's debt to Hyundai. In August 2002, Hyundai entered into a settlement and security agreement ("California Settlement") with all of the defendants in the California action. Under the terms of that agreement, Trailer Source and Southern Trailer agreed to a schedule for payment of the remaining $18 million debt to Hyundai, and Hyundai obtained a security interest in the assets of both Trailer Source and Southern Trailer.

In October 2003, Trailer Source defaulted on its obligations under the California Settlement. On June 30, 2004, Hyundai filed suit in the United States District Court for the Middle District of Tennessee alleging that the JT&T parties had established a scheme to transfer fraudulently trailers and cash from Trailer Source and Southern Trailer to Jackson Truck & Trailer, preventing the first two dealerships from making their scheduled payments to Hyundai pursuant to the California Settlement.

On January 6, 2005, Hyundai filed an involuntary Chapter 7 bankruptcy petition against Trailer Source, and on February 14, 2005, the United States Bankruptcy Court for the Middle District of Tennessee entered an order of relief, which automatically stayed the proceedings in Hyundai's separate action in the United States District Court for the Middle District of Tennessee against the JT&T parties. A number of parties, including Hyundai and the JT&T parties, subsequently filed as creditors of Trailer Source.

---

[2]Although the district court stated that appellant Mark Lazarus was also a shareholder in these companies, Hyundai alleges only that Lazarus played a role in the allegedly fraudulent transfers. Hyundai Br. at 6-7 n.4.

Soon after appointment of a trustee, Hyundai contacted the trustee to request an investigation of the fraudulent-transfer claims and consideration of an action by the trustee against the JT&T parties. At first, the trustee proposed that he employ Hyundai's own counsel at Hyundai's expense to conduct an investigation, but the trustee withdrew this suggestion after the JT&T parties argued that Hyundai had a conflict of interest. On November 8, 2005, the trustee also offered to sell the cause of action to Hyundai, but Hyundai declined because of concerns about the legality of such a transaction. Hyundai then made a demand upon the trustee to pursue an avoidance action against the JT&T parties. Under 11 U.S.C. §§ 544(b) and 550(a), a bankruptcy trustee may seek to avoid certain transfers of a debtor's assets and to recover assets that were wrongfully transferred. After the trustee declined to pursue an avoidance action, Hyundai filed a motion asking the bankruptcy court to grant Hyundai derivative standing to pursue the avoidance action on behalf of the bankruptcy estate.

That motion was opposed by the JT&T parties, and the bankruptcy court held a hearing on February 7, 2006. At that hearing, the trustee explained that he did not pursue the fraudulent-transfer claims primarily because the estate lacked funds to pay the investigation and litigation costs and he "could not retain competent counsel in a case like this to go forward on a contingency fee basis. It's not going to happen." Joint Appendix ("J.A.") at 441 (Hr'g Tr. 2/7/06 at 31). The trustee also explained that "the merits of the case was part of it" and "[t]he economics was part of it," and further cited the "weird situation with the district court." J.A. at 57 (Dist. Ct. Op. at 4). On February 21, 2006, the bankruptcy court denied Hyundai's motion for derivative standing. J.A. at 39-41 (Order on Mot. for Derivative Standing). The bankruptcy court concluded that Hyundai had not made the requisite showing that the fraudulent-transfer claims were "colorable" so as to establish derivative standing under *Canadian Pacific Forest Products, Ltd. v. J.D. Irving, Ltd.* (*In re The Gibson Group, Inc.*), 66 F.3d 1436 (6th Cir. 1995). The bankruptcy court also concluded that the trustee's refusal to pursue the claims was based on the trustee's business judgment that "an outside law firm would not likely take the case on a contingency basis due to its merits." J.A. at 40 (Order on Mot.

for Derivative Standing at 2).   Finally, the court expressed reservations about the viability of the derivative-standing doctrine in light of the Supreme Court's decision in *Hartford Underwriters Insurance Co. v. Union Planters Bank, N.A.*, 530 U.S. 1 (2000). After it was denied derivative standing, Hyundai filed a timely proof of claim in the amount of $19,441,768.   J.A. at 184 (Proof of Claim).

On February 17, 2006, four days before the bankruptcy court's ruling on derivative standing, Hyundai filed a motion for relief from the automatic stay so that it could pursue its separate district-court action against the JT&T parties.   Later that day, the trustee filed a motion for approval of a settlement of the estate's fraudulent-transfer claims against the JT&T parties.   Under that agreement ("Bankruptcy Settlement"), the JT&T parties agreed to pay $50,000 to settle all of the fraudulent-transfer claims.   On March 3, 2006, Hyundai filed a motion for reconsideration of the order denying it derivative standing.   After a hearing on March 28, 2006, the bankruptcy court approved the Bankruptcy Settlement and denied Hyundai's motion for reconsideration.

Following a hearing on May 2, 2006, the bankruptcy court also denied Hyundai's motion for relief from the stay.   Hyundai had argued that it had security interests in certain collateral that could not be settled by the trustee in the Bankruptcy Settlement. However, the bankruptcy court ruled that Hyundai's motion was moot because all of Hyundai's claims were encompassed within the Bankruptcy Settlement.   Further, the court ruled that Hyundai had failed to show that relief was appropriate pursuant to 11 U.S.C. § 362(d)(1) or (2).

On June 6, 2006, Hyundai appealed the following orders of the bankruptcy court to the district court:   (1) the order approving the Bankruptcy Settlement, (2) the order denying Hyundai derivative standing, (3) the order denying Hyundai's motion to reconsider that denial, and (4) the order denying Hyundai's motion for relief from the automatic stay.   The district court reversed all of the orders except the order denying reconsideration.   First, the district court found that the bankruptcy court abused its discretion in approving the Bankruptcy Settlement because it did not set forth adequate

findings in support of its order and because the record contained facts weighing against the settlement, including the fact that the estate received only $50,000 in exchange for the release of nearly $20 million in fraudulent-transfer claims. Second, the district court ruled that the Supreme Court's decision in *Hartford Underwriters* did not affect the continuing validity of derivative standing, and that Hyundai satisfied the test for derivative standing under *Gibson Group*. Third, because it reversed the bankruptcy court's denial of derivative standing, the district court affirmed, without reaching the merits, the bankruptcy court's order denying Hyundai's motion for reconsideration. Finally, the district court reversed the bankruptcy court's order denying Hyundai's motion to lift the automatic stay. The district court explained that the trustee did not have authority to settle Hyundai's security interests in the debtor, which exist irrespective of the avoidance action Hyundai sought to assert on behalf of the estate. The district court thus concluded that the bankruptcy court erred in finding that Hyundai's interests were settled by the Bankruptcy Settlement. Further, the district court concluded that Hyundai was entitled to a lift of the automatic stay under 11 U.S.C. § 362(d) because the estate contained little if any value, and therefore Hyundai's interests were not adequately protected.

After the district court's decision, the JT&T parties filed a motion asking the district court to certify the following questions for interlocutory appeal: (1) whether derivative standing remains available in Chapter 7 proceedings after *Hartford Underwriters*, (2) whether the res judicata effect of the California Settlement barred Hyundai from exercising derivative standing, and (3) whether the district court should have affirmed the Bankruptcy Settlement given the res judicata effect of the California Settlement. The district court certified the first question pursuant to 28 U.S.C. § 1292(b), noting that this court has not yet addressed the continuing viability of derivative standing since *Hartford Underwriters*. On July 24, 2007, we granted permission for an interlocutory appeal on that question. In this consolidated appeal, the JT&T parties also appeal the district court's order reversing the bankruptcy court's denial of Hyundai's motion to lift the automatic stay.

## II. ANALYSIS

### A. Appellate Standing

Hyundai contends that the JT&T parties lack appellate standing to appeal either the district court's order granting Hyundai's request for derivative standing or its order granting Hyundai's motion to lift the automatic stay. Specifically, Hyundai argues that the JT&T parties lack standing under the prudential doctrine of "appellate standing" that applies only in the bankruptcy context. Under that doctrine, which is "more limited than Article III standing or the prudential requirements associated therewith," standing to appeal a bankruptcy order is limited to "person[s] aggrieved" by that order, that is, parties "directly and adversely affected pecuniarily." *Harker v. Troutman (In re Troutman Enters., Inc.)*, 286 F.3d 359, 364 (6th Cir. 2002) (internal quotation marks omitted). However, as we explain below, the doctrine of appellate standing is not applicable under the circumstances of this case.

We are aware of no case that applies the appellate-standing doctrine when it is undisputed that the party who initially challenged the bankruptcy court's order—here Hyundai—had appellate standing to do so. The appellate-standing doctrine has been applied almost exclusively in cases in which the question is whether the party who *appealed the bankruptcy court's order* was sufficiently aggrieved by that order. *See*, *e.g.*, *In re Troutman Enters.*, 286 F.3d at 364-65 (holding that shareholders of debtor corporation lacked appellate standing to appeal bankruptcy court's order awarding insurance proceeds to trustee); *Marlow v. Rollins Cotton Co. (In re The Julien Co.)*, 146 F.3d 420, 423 (6th Cir. 1998) (holding that creditor lacked appellate standing to appeal order of bankruptcy court absent permission of bankruptcy court); *see also Squire v. Scher (In re Squire)*, 282 F. App'x 413 (6th Cir. 2008) (unpublished opinion); *Lyndon Prop. Ins. Co. v. Katz*, 196 F. App'x 383 (6th Cir. 2006) (unpublished opinion); *Monus v. Lambros (In re Monus)*, 63 F. App'x 215 (6th Cir. 2003) (unpublished order); *Fishell v. Soltow (In re Fishell)*, No. 94-1109, 1995 WL 66622 (6th Cir. Feb. 16, 1995) (unpublished opinion), *cert. denied*, 516 U.S. 862 (1995).

We are aware of only one case in this circuit in which the appellate-standing doctrine was applied in a different context.  In *Fidelity Bank, National Association v. M.M. Group, Inc.*, 77 F.3d 880, 882 (6th Cir. 1996), we applied the doctrine to the question of whether the appellants had standing to appeal a district court's order in a federal receivership action.  The appellants in *Fidelity Bank* were an affiliate of a debtor company and a principal and shareholder of that affiliate; along with the debtor, they had been sued by a creditor for fraudulent conveyances in an action consolidated with a receivership action in district court.  *Id.* at 881.  Over the objections of the affiliate and its principal, the receiver entered into an agreement with the creditor in which the creditor abandoned its fraudulent-conveyance claim against the debtor, and in exchange the debtor assigned its rights to pursue its own fraudulent-transfer claim against the affiliate.  *Id.*  After the district court ruled that the receiver had the authority to abandon the receivership's claim, the affiliate and its principal appealed.  *Id.* at 881-82.  On appeal, we applied the appellate-standing doctrine and held that the affiliate and its principal lacked appellate standing because they did not assert claims against the receivership estate's assets and therefore were "not adversaries in the context of the receiver's motion to abandon the fraudulent conveyance claim." *Id.* at 883.  Concluding that the bankruptcy appellate-standing doctrine applied in the receivership context, we noted that "a primary purpose of both receivership and bankruptcy proceedings is to promote the efficient and orderly administration of estates for the benefit of creditors." *Id.* at 882.

In the bankruptcy context, however, we have never applied this doctrine when the party that initiated the appeal from the bankruptcy court had undisputed appellate standing.  The doctrine has been exclusively invoked to limit which parties may initiate *appeals from the bankruptcy court* to the district court or the Bankruptcy Appellate Panel.[3]  Only in the narrow context of a receivership action—in which the district court

---

[3]The dissent acknowledges that "[i]n most cases where appellate standing is at issue before a court of appeals, the question is whether the party who appealed the bankruptcy court's order to the district court was sufficiently aggrieved by that ruling." Dissent at 25.  Indeed, the dissent has pointed to *no* cases from this or any other circuit applying the appellate-standing doctrine when, as here, it is undisputed that the party who initially appealed the bankruptcy court's order had appellate standing.

takes on a role that resembles a bankruptcy court—has this court ever invoked the doctrine to ask whether the party appealing from the district court to the court of appeals was sufficiently aggrieved.

We find support for limiting the appellate-standing doctrine to initial appeals from the bankruptcy court in the rationales that courts have articulated for the doctrine. For instance, the First Circuit has explained that:

> This rule of appellate standing is necessary to insure that bankruptcy proceedings are not unreasonably delayed by protracted litigation that does not serve the interests of either the bankrupt's estate or its creditors. The nature of bankruptcy litigation, with its myriad of parties, directly and indirectly involved or affected by each order and decision of the bankruptcy court, mandates that the right of appellate review be limited to those persons whose interests are directly affected.

*In re El San Juan Hotel*, 809 F.2d 151, 154 (1st Cir. 1987). Thus, a principal rationale of the appellate-standing doctrine is to prevent parties indirectly affected by bankruptcy-court rulings from bringing appeals on tangential issues.

However, once a party with undisputed standing has appealed a bankruptcy court's order in district court, and that issue has been litigated in the district court, these concerns are no longer implicated to the same degree. First, the district court may hear an initial appeal only from a sufficiently "aggrieved party" whose interests are directly implicated in the bankruptcy proceedings. Aligned on the other side in the district court are adverse parties who, though they may not independently meet the requirements of appellate standing, have a concrete stake in the outcome at least sufficient to establish an Article III "case" or "controversy." When the same parties and issues remain in the case on a second layer of appeal (from the district court to the court of appeals), the case logically still involves parties sufficiently aggrieved so as to satisfy the prudential doctrine's demand that the appeal must involve directly affected parties. Moreover, applying this prudential doctrine to bar appeals by only certain parties from the district court to the court of appeals would create a perverse imbalance. Here, for instance, if Hyundai had lost in the district court, it is clear that it would have appellate standing to

pursue a second appeal to the court of appeals. However, if the appellate-standing doctrine were applied in this context, the JT&T parties—parties adverse to Hyundai in the district court—might lack standing to appeal the district court's adverse rulings on the very same issues.

In sum, we hold that the bankruptcy appellate-standing doctrine is not applicable to the second layer of appeal, from the district court to the court of appeals, when it is uncontested that the party who appealed the bankruptcy court's order to the district court had appellate standing.[4] Instead we apply the general rule that "a party must be aggrieved by the judicial action from which it appeals." *City of Cleveland v. Ohio*, 508 F.3d 827, 836 (6th Cir. 2007) (internal quotation marks omitted). Because it is uncontested that the JT&T parties are aggrieved by the decision of the district court, the JT&T parties have standing to pursue this appeal.

## B. Availability of Derivative Standing

The district court concluded that the Bankruptcy Code permits grants of derivative standing to creditors to pursue avoidance claims on behalf of the bankruptcy estate. Hyundai seeks derivative standing to assert avoidance claims against the JT&T parties pursuant to two statutory provisions that authorize an estate to recover assets wrongfully transferred from the debtor. Section 544(b)(1) provides that:

> Except as provided in paragraph (2), *the trustee may* avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under 502(e) of this title.

11 U.S.C. § 544(b)(1) (emphasis added). Section 550(a) then provides that:

> Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, *the trustee may* recover, for the benefit of the estate, the

---

[4]Because we conclude that the appellate-standing doctrine does not apply to this second layer of appeal, we find it unnecessary to address the dissent's detailed arguments as to why, assuming that the doctrine does apply in this context, the JT&T parties lack appellate standing.

property transferred, or, if the court so orders, the value of such property, from—

> (1) the initital transferee of such transfer or the entity for whose benefit such transfer was made; or

> (2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a) (emphasis added).**[5]**   The JT&T parties contend that the plain language of §§ 544(b) and 550(a) authorizes only the trustee to act and thus precludes derivative standing by the creditor to proceed on behalf of the estate. They argue that derivative standing under these provisions is foreclosed by the decision in *Hartford Underwriters* where the Supreme Court determined that identical "the trustee may" language in § 506(c) of the Bankruptcy Code foreclosed any party other than the trustee from using that provision to recover certain administrative costs. The JT&T parties further submit that the rationale for allowing derivative standing in Chapter 11 proceedings, which this court has permitted post-Code but pre-*Hartford Underwriters* in *Gibson Group*, does not extend to Chapter 7 proceedings where there is always an independent bankruptcy trustee.

We review the decision of the bankruptcy court directly, giving no deference to the decision of the district court. *Heavrin v. Schilling (In re Triple S Restaurants, Inc.)*, 519 F.3d 575, 578 (6th Cir. 2008). We review the bankruptcy court's legal conclusions de novo and its factual findings for clear error. *Id.*

In *Hartford Underwriters*, the Supreme Court held that § 506(c) of the Bankruptcy Code was exclusively enforceable by the bankruptcy trustee. That section provides as follows:

> The *trustee may recover* from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim . . . .

---

**[5]**In addition to § 544, §§ 545, 547, 548, and 549 authorize avoidance actions for the benefit of the estate—all with identical "the trustee may" language.

11 U.S.C. § 506(c) (emphasis added). Hartford Underwriters, an insurance company that had provided workers' compensation insurance to the Chapter 7 debtor, sought to recover unpaid premiums. Because the estate lacked sufficient unencumbered funds to pay the premiums, Hartford sought to charge the premiums to a secured creditor pursuant to § 506(c), which allows for the charge of certain administrative expenses against lienholders. Hartford argued that § 506(c) gave it authority to bring an independent action to recover the premiums. *See Hartford Underwriters*, 530 U.S. at 3-5. The Supreme Court disagreed, holding that the plain language of § 506(c) indicated that the trustee was the only party authorized to invoke the provision. *Id.* at 6. The Court noted that "[w]here a statute . . . names the parties granted [the] right to invoke its provisions . . . such parties only may act." *Id.* at 6-7 (internal quotation marks omitted) (second alteration in original). Next, the Court cited the unique role played by the trustee in bankruptcy proceedings, "mak[ing] it entirely plausible that Congress would provide a power to him and not to others." *Id.* at 7. Because it concluded that the text of the Code was clear, the Court rejected Hartford's reliance upon pre-Code practice in which non-trustees were sometimes permitted to directly pursue administrative expenses. *Id.* at 9-11. Finally, the Court observed that if non-trustees were permitted independently to pursue recovery they might "impair the ability of the bankruptcy court to coordinate proceedings," and might "proceed even where the trustee himself planned to do so." *Id.* at 13.

The Court carefully noted, however, that it did "not address whether a bankruptcy court can allow other interested parties to act in the trustee's stead in pursuing recovery under § 506(c)." *Id.* at 13 n.5. Noting the "practice of some courts of allowing creditors . . . a derivative right to bring avoidance actions when the trustee refuses to do so, even though the applicable Code provisions mention only the trustee," the Court explained that this practice "ha[d] no analogous application here, since [Hartford] did not ask the trustee to pursue payment . . . and did not seek permission from the Bankruptcy Court to take such action in the trustee's stead." *Id.* (internal citations omitted). Thus, the Court made clear that it was rejecting only an "independent

right to use § 506(c)." *Id.* Accordingly, although *Hartford Underwriters* provides guidance for our analysis, it does not control the question of whether the Bankruptcy Code allows courts to grant derivative standing to creditors to bring avoidance actions when the trustee refuses to do so.

We first note that since *Hartford Underwriters* every court of appeals to address derivative standing to pursue avoidance claims has affirmed the practice's validity. Two courts have expressly considered the impact of *Hartford Underwriters* and have upheld the practice. *See PW Enters., Inc. v. N.D. Racing Comm'n (In re Racing Servs., Inc.)*, 540 F.3d 892, 898 & n.7 (8th Cir. 2008) (holding that "derivative standing is available to a creditor to pursue avoidance actions when it shows that a Chapter 7 trustee (or debtor-in-possession in the case of Chapter 11) is 'unable or unwilling' to do so" notwithstanding *Hartford Underwriters*); *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 580 (3d Cir. 2003) (en banc) (holding that "bankruptcy courts can authorize creditors' committees [in Chapter 11 proceedings] to sue derivatively to avoid fraudulent transfers for the benefit of the estate" notwithstanding *Hartford Underwriters*). Two other circuits have continued to approve of the practice post-*Hartford Underwriters*, though without mention of the *Hartford Underwriters* decision. *Glinka v. Murad (In re Housecraft Indus. USA, Inc.)*, 310 F.3d 64, 70-72 (2d Cir. 2002); *Commodore Int'l Ltd. v. Gould (In re Commodore Int'l Ltd.)*, 262 F.3d 96, 99-100 (2d Cir. 2001); *Fogel v. Zell*, 221 F.3d 955, 965-66 (7th Cir. 2000) (approving of derivative standing in dicta).

We begin, as did the Supreme Court in *Hartford Underwriters*, with the observation that "Congress 'says in a statute what it means and means in a statute what it says there.'" 530 U.S. at 6 (quoting *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992)). Sections 544(b) and 550(a)—and other avoidance provisions—make no reference to derivative standing and state only that "the trustee may" bring certain avoidance and recovery actions. If these were the only relevant sections of the Code, *Hartford Underwriter*'s interpretation of "the trustee may" in § 506(c) would weigh strongly against derivative standing given the "natural presumption that identical words

used in different parts of the same act are intended to have the same meaning." *Atl. Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932). However, our analysis is not so cribbed, because other provisions of the Bankruptcy Code, as well as pre-Code practice, clearly contemplate the equitable power of bankruptcy courts to authorize creditors, in appropriate instances, to bring claims on behalf of the bankruptcy estate.

First, in 11 U.S.C. § 503(b)(3)(B) Congress has expressly provided that creditors may be compensated on a priority basis for their efforts in recovering property for the benefit of the estate. Specifically, § 503(b)(3)(B) provides for the priority payment of the expenses of "a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor." 11 U.S.C. § 503(b)(3)(B). An avoidance action pursuant to § 544(b)—as Hyundai proposes here—falls within the scope of § 503(b)(3)(B) as an action to recover "property transferred . . . by the debtor." Based upon the text and statutory history of § 503(b)(3)(B), we believe that the only explanation for this provision is that it approves the practice of permitting creditors, with court authorization, to pursue claims on behalf of bankrupt debtors. *See Cybergenics*, 330 F.3d at 563-66.

We find support for this reading in the statutory history of § 503(b)(3)(B). Section 503(b)(3)(B) is derived from § 64a(1) of the Bankruptcy Act. As early as 1900, derivative standing for creditors had been judicially recognized. *See Chatfield v. O'Dwyer*, 101 F. 797, 800 (8th Cir. 1900).[6] In 1903, Congress amended the Bankruptcy Act of 1898 to add § 64a, which provided for the priority payment of a creditor's expenses when transferred assets were "recovered for the benefit of the estate . . . by the efforts" of the creditor. Act of Feb. 5, 1903, ch. 487, sec. 14, 32 Stat. 797, 800 (codified as amended at 11 U.S.C. § 104(a)(1)) (repealed 1978). "The ostensible purpose of the amendment was presumably to make explicit what had already been determined to be implicit: that creditors acting for the benefit of the estate were allowed to sue

---

[6]Derivative standing was recognized in this circuit by 1915. *In re Stearns Salt & Lumber Co.*, 225 F. 1 (6th Cir. 1915).

derivatively." Alan R. Lepene & Sean A. Gordon, *The Case for Derivative Standing in Chapter 11: "It's the Plain Meaning, Stupid,"* 11 Am. Bankr. Inst. L. Rev. 313, 319 (2003). When Congress enacted the Bankruptcy Code in 1978, it continued the practice of § 64a(1) in what is now § 503(b)(3)(B) of the Bankruptcy Code. *See* H.R. Rep. No. 95-595, at 355 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6311 (explaining that the proposed § 503(b) of the new Bankruptcy Code "is derived mainly from section 64(a)(1) of the Bankruptcy Act, with some changes"); *see also Com-1 Info, Inc. v. Wolkowitz (In re Maximus Computers, Inc.)*, 278 B.R. 189, 197 (B.A.P. 9th Cir. 2002) ("Section 503(b)(3)(B) carries forward the long-settled authority under former Bankruptcy Act § 64a(1) for creditors to sue in the name of the trustee to recover property for the benefit of the estate and to be compensated as administrative expenses."). We believe that the well-established practice of derivative standing, unlike the practice at issue in *Hartford Underwriters*, is "'the type of "rule" that . . . Congress was aware of when enacting the Code.'" *Hartford Underwriters*, 530 U.S. at 10 (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 246 (1989)).

We further believe that § 503(b)(3)(B) would be meaningless if the Code did not also contemplate the practice of derivative standing. Although the JT&T parties make little attempt to address the significance of § 503(b)(3)(B), we note that parties in other cases have offered alternative interpretations of § 503(b)(3)(B) in an attempt to show that this provision would not be meaningless absent the practice of derivative standing. One alternative interpretation posits a creditor who, after obtaining a lift of the automatic stay from the bankruptcy court, independently pursues a state-law fraudulent-conveyance claim and surrenders any surplus recovery to the estate. However, as the Third Circuit observed in *Cybergenics*, this interpretation fails because state fraudulent-conveyance law provides that "a transfer or obligation may be avoided only 'to the extent necessary to satisfy the creditor's claim.'" 330 F.3d at 565 (quoting 7A Uniform Laws Annotated, Uniform Fraudulent Transfer Act § 8; 7A Uniform Laws Annotated, Uniform Fraudulent Conveyance Act § 9). "Because an oversecured creditor cannot

directly recover any property beyond that necessary to satisfy its own claim, it cannot recover property for the benefit of the estate unless it sues derivatively." *Id.*

A second alternative interprets § 503(b)(3)(B) as authorizing expenses for creditors "who object to discharge and then successfully locate and bring into the estate assets that had been transferred or concealed by the debtor." *Cybergenics*, 330 F.3d at 584 (Fuentes, J., dissenting). Some courts have accepted this interpretation and allowed creditors to recoup expenses when the creditors' efforts in discovering hidden assets and opposing discharge ultimately benefit the estate. *See id.* (listing cases). The theory behind this interpretation is that, although the creditor does not technically "recover" property, the trustee would not have recovered the property but for the creditors' assistance in locating the assets. *See*, *e.g.*, *In re Harvey*, No. 04-35576PM, 2006 WL 4481990, at *2 (Bankr. D. Md. Nov. 22, 2006) ("While technically the creditors did not recover property for the benefit of the Debtor, they were the cause without which no recovery would have taken place."); *In re Spencer*, 35 B.R. 280, 281 (Bankr. N.D. Ga. 1983) (finding that creditor's actions in locating assets and opposing discharge qualified for recoupment of expenses under § 503(b)(3)(B)). This reading, however, is inconsistent with the plain language of § 503(b)(3)(B), which provides that it is the "creditor" who must "recover." When the creditor merely provides investigative assistance or otherwise helps the trustee locate assets, it is the trustee who ultimately recovers rather than the creditor. *See Cybergenics*, 330 F.3d at 565 ("[I]nvestigative assistance would not implicate § 503(b)(3)(B) because the [creditors'] committee would not itself *recover* the property."); *In re Beale*, 358 B.R. 744, 745-47 (Bankr. N.D. Ill. 2006) (holding that creditor that conducted investigations and assisted trustee in recovering assets for estate could not recoup expenses under § 503(b)(3)(B) because it was the trustee who "recovered"); *In re Blount*, 276 B.R. 753, 763 (Bankr. M.D. La. 2002) ("[Section 503(b)(3)(B)] is limited to situations wherein the creditor is 'a creditor that recovers.' [T]he connection must be direct. The creditor must be the recovering party; extension to situations where the creditor's action indirectly or ultimately leads to the recovery of property is contrary to the statute."). Consequently, we reject this

alternative interpretation as inconsistent with § 503(b)(3)(B)'s clear requirement that the creditor must be the recovering party.

Because we reject these alternative interpretations, we agree with the Third Circuit that § 503(b)(3)(B) "would be meaningless unless authority [to sue derivatively] existed." *Cybergenics*, 330 F.3d at 567. We do not believe, however, that § 503(b)(3)(B) authorizes derivative standing in the first instance. Instead, like the Third Circuit, we believe this authority derives from "bankruptcy courts' equitable power to craft flexible remedies in situations where the Code's causes of action fail to achieve their intended purpose." *Id.*

The Supreme Court has long recognized that bankruptcy courts are courts of equity with the power to apply flexible equitable remedies in bankruptcy proceedings. *See Young v. United States*, 535 U.S. 43, 50 (2002) ("[B]ankruptcy courts . . . are courts of equity and 'appl[y] the principles and rules of equity jurisprudence.'" (quoting *Pepper v. Litton*, 308 U.S. 295, 304 (1939) (second alteration in original)); *United States v. Energy Resources Co.*, 495 U.S. 545, 549 (1990) ("[B]ankruptcy courts, as courts of equity, have broad authority to modify creditor-debtor relationships."); *Local Loan Co. v. Hunt*, 292 U.S. 234, 240 (1934) ("[C]ourts of bankruptcy are essentially courts of equity, and their proceedings inherently proceedings in equity."); *see also* H.R. Rep. No. 95-595, at 359 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6315 (stating that under the new Bankruptcy Code "[t]he bankruptcy court will remain a court of equity").

We agree with the Third Circuit that "the ability to confer derivative standing . . . is a straightforward application of bankruptcy courts' equitable powers." *Cybergenics*, 330 F.3d at 568. In § 544(b), Congress clearly intended for bankruptcy estates to recover assets fraudulently transferred by the debtor. To effectuate this intent, Congress authorized the trustee (or debtor-in-possession) to bring avoidance actions to maximize the value of the estate. Typically, the system designed by Congress ensures that the value of the estate is maximized and that creditors' rights are protected because the trustee will pursue valuable avoidance claims. However, when the trustee unjustifiably

refuses to bring an avoidance action under § 544(b), the system "breaks down."  "It is in precisely this situation that bankruptcy courts' equitable powers are most valuable, for the courts are able to craft flexible remedies that, while not expressly authorized by the Code, effect the result the Code was designed to obtain."  *Cybergenics*, 330 F.3d at 568.  When the trustee is delinquent, the bankruptcy court—or the district court of which it is a unit[7]—should be able to exercise its equitable powers to authorize a creditor to pursue recovery of fraudulently transferred property for the benefit of the estate.  In so doing, this equitable remedy effectuates Congress's intent that fraudulently transferred property be recovered for the bankruptcy estate.

The JT&T parties argue in the alternative that even if derivative standing is available in Chapter 11 proceedings, it should not be available in Chapter 7 proceedings such as the instant case.  The JT&T parties acknowledge that derivative standing may be necessary in Chapter 11 proceedings where typically there is not an independent trustee and thus it is the debtor ("debtor-in-possession") who generally decides whether to bring an avoidance action.  We noted in *Gibson Group* that "[a] debtor-in-possession often acts under the influence of conflicts of interest and may be tempted to use its discretion . . . as a sword to favor certain creditors over others, rather than as a tool to further its reorganization for the benefit of all creditors as Congress intended."  *Canadian Pacific Forest Products, Ltd. v. J.D. Irving, Ltd.* (*In re The Gibson Group, Inc.*), 66 F.3d 1436, 1441 (6th Cir. 1995).  The JT&T parties submit that derivative standing is not necessary in the Chapter 7 context because Chapter 7 proceedings always have an independent trustee who is not subject to such conflicts of interest.

We reject this attempt to limit derivative standing to Chapter 11 proceedings.  First, there is circuit precedent allowing derivative standing in Chapter 7 proceedings, albeit in a pre-Bankruptcy Code case.  *William B. Tanner Co. v. United States (In re Automated Bus. Sys., Inc.)*, 642 F.2d 200 (6th Cir. 1981).  In *Automated Business*

---

[7]Bankruptcy judges are "units" of the district court.  28 U.S.C. § 151.  "Each district court *may provide* that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district."  28 U.S.C. § 157(a) (emphasis added).

*Systems*, a pre-Bankruptcy Reform Act of 1978 case, we held that a creditor had derivative standing to pursue an avoidance action when the trustee in Chapter 7 liquidation proceedings refused to bring an action because of a lack of funds in the estate. *Id.* at 201-02. We noted there that the need for derivative standing could be particularly great in the context of Chapter 7 proceedings where there may be "no funds remain[ing] to divide among creditors or to finance a suit to set aside a fraudulent conveyance." *Id.* at 202.

Second, there is no textual support in the Code for drawing such a distinction between the Chapter 7 and Chapter 11 contexts. Section 503(b)(3)(B), which provides textual support for the availability of derivative standing, applies in both Chapter 7 and Chapter 11 proceedings. We do not believe that this was a mere oversight, given that Congress expressly limited another subsection of § 503(b)(3) to Chapters 9 and 11. *See* § 503(b)(3)(D) (providing that creditors and other enumerated parties may recoup costs incurred "in making a substantial contribution in a case under chapter 9 or 11 of this title").

There are also substantial policy reasons for allowing derivative standing in Chapter 7 proceedings. As we noted in *Automated Business Systems*, in contrast to Chapter 11 reorganization proceedings, in Chapter 7 liquidation proceedings there are often "no funds remain[ing] to divide among creditors or to finance a suit to set aside a fraudulent conveyance." 642 F.2d at 202. Consequently, a trustee in Chapter 7 proceedings may decline to pursue meritorious and potentially sizeable claims simply because there are inadequate funds in the estate to pay litigation expenses. Indeed, that appears to be the case here. The trustee explained that he "didn't have any money in the case" and that "economics" was part of reason that he did not pursue the avoidance claims urged by Hyundai. J.A. at 441 (Hr'g Tr. 2/7/06 at 31); J.A. at 57 (Dist. Ct. Op. at 4). Although the trustee stated that he "could not retain competent counsel in a case like this to go forward on a contingency fee basis," the record does not indicate whether the trustee actually attempted to find contingency counsel or simply concluded on his own that it would be futile. J.A. at 441 (Hr'g Tr. 2/7/06 at 31). In any case, we do not

believe that the trustee's failure to obtain contingency counsel suggests that the avoidance claims were weak or insubstantial. We note, for instance, that the JT&T parties offered to settle the claims for $50,000, and that Hyundai has made a substantial investment in pursuing these claims in the present case and in the district court action. Instead, the record indicates that the trustee declined to pursue apparently colorable—and potentially sizeable—claims in large part because of a lack of available funds to finance an investigation and possible litigation. Just as conflicts of interest may lead to underenforcement of avoidance claims by debtors-in-possession in Chapter 11 proceedings, a lack of available funds may lead to underenforcement by trustees in Chapter 7 proceedings. In this situation, we believe that bankruptcy courts should be able to authorize derivative standing for creditors willing and able to prosecute colorable claims that may enhance the value of the bankruptcy estate in Chapter 7 proceedings.

Finally, we pause to emphasize additional ways that the practice of derivative standing that we approved in *Gibson Group* and now reaffirm is distinguishable from the practice addressed by the Supreme Court in *Hartford Underwriters*. There, the Court expressly limited its holding to a creditor's assertion of an independent right to proceed under the Code (specifically under § 506(c)). 530 U.S. at 13 n.5. Unlike the petitioner in *Hartford Underwriters*, Hyundai does not assert an independent right, but instead must seek and obtain permission from the bankruptcy court (or the district court of which it is a unit) before it may proceed on behalf of the estate. Because derivative standing is not asserted as an independent right and must be authorized by the bankruptcy court, it does not present the same risk of interference with the trustee and the bankruptcy court feared by the Supreme Court in *Hartford Underwriters*. The *Hartford Underwriters* Court expressed concern that allowing parties to proceed independently under § 506(c) without court permission could "impair the ability of the bankruptcy court to coordinate proceedings, as well as the ability of the trustee to manage the estate" and that parties "could proceed even where the trustee himself planned to do so." *Id.* at 13. Further, the Court feared that parties "might attempt to use § 506(c) even though their claim . . . was quite weak." *Id.* However, these concerns are

greatly alleviated by the procedural prerequisites to derivative standing.  In *Gibson Group*, we held that a party moving for derivative standing must show that:  (1) a demand was made on the trustee (or debtor-in-possession) to act, (2) the trustee (or debtor-in-possession) declined, (3) a colorable claim exists that would benefit the estate, and (4) the trustee's (or debtor-in-possession's) inaction was an abuse of discretion.  66 F.3d at 1446.  In sharp contrast to the practice disapproved of in *Hartford Underwriters*, a creditor may not proceed when the trustee plans to do so, a creditor may not bring a weak or non-colorable claim, and, because derivative standing must be judicially approved, the bankruptcy court's ability to coordinate proceedings is not impaired.

In conclusion, we reaffirm the continued vitality after *Hartford Underwriters* of granting derivative standing to creditors to pursue avoidance actions on behalf of the estate and hold that this practice is available in both Chapter 11 and Chapter 7 proceedings.

## C.  Application of *Gibson Group* Factors

After concluding that derivative standing survived *Hartford Underwriters*, the district court found that Hyundai satisfied the test for derivative standing under *Gibson Group*.  This issue was not certified to this court, and the parties have not addressed it in their briefs on appeal.  "[W]e recognize that even those issues not properly certified are subject to our discretionary power of review if otherwise necessary to the disposition of the case."  *Easley v. Pettibone Mich. Corp.*, 990 F.2d 905, 912 (6th Cir. 1993) (internal quotation marks omitted).  Here, however, the record on appeal is inadequate. Under *Gibson Group*, a party seeking derivative standing must establish, *inter alia*, a "colorable" claim that would benefit the estate.  66 F.3d at 1446.  In determining whether a claim is colorable in this context, courts initially look to the "face of the complaint."  *Id.* at 1439.  Looking to the complaint that Hyundai filed in its separate district court action, the district court in this case found that the complaint provided sufficient evidence of a colorable claim.  That complaint, however, was not included in the Joint Appendix in this appeal.  Accordingly, we will not guess at the complaint's

contents based on descriptions by the parties and the courts below.  Because this issue was not certified to this court, the parties did not argue this issue on appeal, and the record before us is inadequate, we decline to review the district court's ruling that Hyundai satisfied *Gibson Group*'s test for derivative standing.

## D.  Lift of Automatic Stay

Because we affirm the district court's grant of derivative standing to Hyundai, we conclude that relief from the automatic stay is not necessary for the adequate protection of Hyundai's interests.  Hyundai requested that the bankruptcy court lift the automatic stay so that it could return to the district court to pursue its action against the JT&T parties to recover the assets allegedly fraudulently transferred from Trailer Source.  A bankruptcy court must grant such a request "for cause, including the lack of adequate protection of an interest in property of such party in interest."  11 U.S.C. § 362(d)(1).

Although Hyundai argues on appeal that we should affirm the district court's order granting relief from the stay, Hyundai also appears to acknowledge that this would be unnecessary if it is granted derivative standing.  Indeed, the bankruptcy court's denial of derivative standing was the only reason that Hyundai later requested relief from the automatic stay.  Hyundai states that:

> For purposes of the derivative standing motion, Hyundai agreed to subordinate its secured claim and receive a pro rata distribution from any recovery along with the allowed claims of other creditors in the case. The denial of derivative standing by the Bankruptcy Court formed the basis for Hyundai's later request for relief from the automatic stay on February 17, 2006, to enforce its non-bankruptcy rights granted in the Settlement and Security Agreement.

Hyundai Br. at 10 n.5.  Hyundai sought to have the stay lifted so that it could bring fraudulent-transfer claims against the JT&T parties to recover assets allegedly transferred from Trailer Source.  That is precisely what it will do now that it has been granted derivative standing, only it will do so indirectly, on behalf of the estate, rather than directly.  Because Hyundai will now be able to pursue its fraudulent-transfer claims against the JT&T parties derivatively on behalf of the estate, relief from the stay is not

necessary to provide "adequate protection" of Hyudai's interests.  Accordingly, we reverse the district court's grant of stay relief.

### III.  CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's grant of derivative standing to Hyundai and **REVERSE** the district court's grant of relief from the stay to Hyundai.  The case is remanded for further proceedings consistent with this opinion.

---

**DISSENT**

---

ROGERS, Circuit Judge, dissenting.  Because appellants do not have appellate standing, I would dismiss their appeal.  The JT&T parties have not established that they have a protected pecuniary interest supporting reversal of either the order denying Hyundai's request for derivative standing or the order denying Hyundai's motion to lift stay.    Accordingly, they do not have appellate standing to challenge those determinations.

"Appellate standing in bankruptcy cases is more limited than Article III standing or the prudential requirements associated therewith."  *Harker v. Troutman (In re Troutman Enters., Inc.)*, 286 F.3d 359, 364 (6th Cir. 2002).  Standing to appeal a bankruptcy order is limited to "persons aggrieved" by that order, *i.e.*, parties "directly and adversely affected pecuniarily."[1]  *Id.* (quoting *Fid. Bank, Nat'l Ass'n v. M.M. Group, Inc.*, 77 F.3d 880, 882 (6th Cir. 1996)).  Consequently, parties may only appeal bankruptcy orders in which they have a direct financial stake such that the order directly "diminishes their property, increases their burdens or impairs their rights."  *Id.*  This prudential requirement, derived from the now-repealed Bankruptcy Act of 1898,[2] is based on "the 'particularly acute' need to limit appeals in bankruptcy proceedings, which often involve a 'myriad of parties . . . indirectly affected by every bankruptcy court order[.]'"  *In re Combustion Eng'g*, 391 F.3d at 215 (alteration in original).

---

[1] By contrast, at least in Chapter 11 proceedings, any "party in interest," such as a debtor, trustee, or creditor, may raise and be heard on any issue before the bankruptcy court.  11 U.S.C. § 1109(b).

[2] Under § 39(c) of the former Bankruptcy Act of 1898, 11 U.S.C. § 67(c) (repealed 1978), appellate standing was restricted to a "person aggrieved by an order of the referee."  Although the current Bankruptcy Code contains no similar provision, courts of appeals have continued to impose this requirement as a prudential limitation on appellate standing.  *See, e.g.*, *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 214 (3d Cir. 2004); *Kabro Assocs. of West Islip, LLC v. Colony Hill Assocs. (In re Colony Hill Assocs.)*, 111 F.3d 269, 273 (2d Cir. 1997);  *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 499 (6th Cir. 1990); *In re El San Juan Hotel*, 809 F.2d 151, 154 (1st Cir. 1987); *Fondiller v. Robertson (In re Fondiller)*, 707 F.2d 441, 443 (9th Cir. 1983).

In most cases where appellate standing is at issue before a court of appeals, the question is whether the party who appealed the bankruptcy court's order to the district court was sufficiently aggrieved by that ruling. Here, as the majority opinion notes, there is no dispute that the party who initially challenged the bankruptcy court's orders, Hyundai, had appellate standing to do so. Instead, the issue in this case is whether the JT&T parties may now appeal the district court's reversal of the bankruptcy court's orders.

Even if the JT&T parties did not need to be persons aggrieved to defend an order of the bankruptcy court before the district court, see *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147, 160 (D.N.J. 2005), they must be such parties to appeal the district court's ruling to this court. The appellate standing doctrine exists to prevent indirectly affected parties from stalling bankruptcy proceedings, and this interest is implicated in the context of an appeal from a district court to a court of appeals as much as in an appeal from a bankruptcy court to a district court. Moreover, there is no more of a "perverse imbalance" in permitting only one side to appeal a district court judgment than in permitting only one side to appeal a bankruptcy court decision, the context in which the majority accepts application of the appellate standing limitation.

The JT&T parties argue that they were aggrieved by the district court order granting Hyundai derivative standing and lifting the automatic bankruptcy stay, and that they thus should be permitted to appeal that decision. They primarily argue for appellate standing in their capacity as defendants to future litigation, pointing out that they would not be subject to suit by either the estate or Hyundai but for the district court's decision. In the alternative, the JT&T parties contend that they have standing as creditors to challenge any orders affecting the assets and administration of the bankruptcy estate. Neither of those contentions is correct.

**A.**

The JT&T parties do not have appellate standing, either as defendants to an adversary proceeding or as creditors of the estate, to attack the order granting Hyundai derivative standing.  First, it is well established that parties are not aggrieved by an order granting a creditor derivative standing when their interest in the order is as party defendants in the resulting adversary proceeding.  *See Travelers Ins. Co. v. H.K. Porter Co.*, 45 F.3d 737, 743 (3d Cir. 1995); *In re El San Juan Hotel*, 809 F.2d at 155; *In re Fondiller*, 707 F.2d at 443; *Moran v. Official Comm. of Admin. Claimants*, No. 1:05CV2285, 2006 WL 3253128, at *5 (N.D. Ohio Nov. 8, 2006) ("[T]here are no cases which support the argument that litigation, whether real or potential, makes someone a 'person aggrieved' for standing purposes."); *In re Ashford Hotels, Ltd.*, 235 B.R. 734, 739 (S.D.N.Y. 1999).  This is because the interest that entities such as the JT&T parties assert as defendants to an adversary proceeding is not protected by the Bankruptcy Code.  To be considered a person aggrieved, an appellant must establish both an "injury in fact as well as that the interest which he seeks to protect . . . is an interest which the Bankruptcy Act seeks to protect or regulate." *In re The Harwald Co.*, 497 F.2d 443, 444 (7th Cir. 1974).  Even if we assume that 11 U.S.C. §§ 544(b) and 550(a) do preclude all parties other than the trustee from bringing avoidance and recovery actions, as the JT&T parties contend, the purpose of such preclusion is presumably to allow the trustee to retain control over the administration of the estate.  *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 7, 13 (2000) (discussing the "unique" role that the trustee plays in managing the estate).  It is not to protect parties against whom relief may be sought for the estate.  The interest of the JT&T parties as adversary defendants, which is avoiding liability to the estate, is diametrically opposed to the primary goal of §§ 544(b) and 550(a), which is to allow the estate to recover fraudulently transferred assets, as well as that of the Bankruptcy Code in general, which "is to minimize the injury to creditors," *In re The Harwald Co.*, 497 F.2d at 444.  Because the interest of the JT&T parties as defendants to an adversary proceeding is not one that the Code

provisions relied upon protect, they do not have appellate standing in this capacity to challenge the reversal of the order denying Hyundai derivative standing.

Moreover, as several courts have observed, an order that simply allows an adversary proceeding to go forward does not directly diminish a defendant's property, increase his burdens, or impair his rights. *E.g.*, *In re El San Juan Hotel*, 809 F.2d at 155; *In re Fondiller*, 707 F.2d at 443. As those courts have explained, a bankruptcy order permitting a creditor to bring an action on the estate's behalf affects such an adversary defendant's rights incidentally, rather than directly. *See, e.g.*, *In re El San Juan Hotel*, 809 F.2d at 155. Although a named defendant in an adversary proceeding might have an interest in defending himself against liability, an order that merely allows the action to go forward does not impair his ability to so. *Id.*; *see also Fidelity Bank*, 77 F.3d at 883. The order does not, for example, prevent the defendant from asserting a claim or defense in the adversary proceeding that might otherwise be available to him. *Fidelity Bank*, 77 F.3d at 883; *In re El San Juan Hotel*, 809 F.2d at 155. Here, indeed, the JT&T parties state that they will argue in the adversary action that the California Settlement prevents Hyundai from recovering transferred assets in excess of the amount needed to satisfy allowed pre-petition and administrative creditor claims.

Because the interest that the JT&T parties assert as defendants to an adversary proceeding is not protected by the Bankruptcy Code provisions relied upon in this appeal, it is irrelevant that it is no longer uncertain whether the JT&T parties will be sued by the estate. The JT&T parties point out that Hyundai has already substituted the estate as plaintiff in the district court action against them. They contend, based on this, that the order's effect on their interest is now sufficiently definite to permit them to appeal that decision. This argument misses the point. Absent a direct, protected interest, it does not matter how certain the effect of the order is. Indeed, the JT&T parties' potential liability is no less speculative than that faced by named defendants in other cases who were held not to be persons aggrieved. In *In re El San Juan Hotel*, for example, the First Circuit held that a former bankruptcy trustee did not have appellate standing to challenge the appointment of counsel for the estate to bring a fraudulent

concealment action against him.  809 F.2d at 155.  Because the former trustee's "only interest [wa]s as party defendant," the First Circuit held that the appointment "ha[d] no direct and immediate impact on [his] pecuniary interests."  *Id.*  This was the case even though the moving party explicitly "request[ed] permission *to prosecute a suit*" and the bankruptcy court "granted the requisite leave to *file the complaint*."  *Id.* at 153 (emphasis added).  *See also Moran*, 2006 WL 3253128, at *5 (holding that an adversary defendant was not a person aggrieved even though creditor committee acting on behalf of the estate "ha[d] already filed claims against him").

*In re Fondiller*, upon which the JT&T parties rely, is not to the contrary.  In that case, the Ninth Circuit held that an appellant could not appeal from a bankruptcy order authorizing the employment of special counsel for the estate to investigate and "recover assets allegedly concealed by appellant."  707 F.2d at 443.  Although it does not appear that an action had yet been brought against the appellant at the time of her appeal, unlike in this case, it was hardly unlikely there that one would soon be brought.  At the time of the order, the appointed party had already performed an "extensive investigation" into the fraudulent transfers.  *Id.* at 442.  Moreover, the trustee was specifically appointed to "recover" the transferred assets.  *Id.*  Nothing in the Ninth Circuit's analysis suggests that it hinged upon the fact that an adversary action had not yet been brought such that the appellant would have had appellate standing had she already been named as a defendant.  In fact, in the subsequently decided *Duckor Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.)*, 177 F.3d 774 (9th Cir. 1999), the Ninth Circuit strongly suggested that a party is not aggrieved by an order that permits an adversary proceeding to go forward, even where the party has already been named as a defendant.  There, the Ninth Circuit held that the interest of an appellant who had already been sued was "similar" to the interest asserted in *In re Fondiller*.  *Id.* at 778.  Nonetheless, the court held that the *Duckor* appellant had appellate standing because it "also ha[d] alleged" that it would be harmed by the order as a creditor of the estate, and thus had "the type of direct pecuniary interest that was lacking in *Fondiller*."  *Id.*; *see also In re El San Juan Hotel*, 809 F.2d at 155 (explicitly relying upon *In re Fondiller* in holding that the

appellant was not aggrieved despite virtual certainty that he would be named as a defendant).

The JT&T parties were also not aggrieved in their capacity as purported creditors of the estate. This is a distinct theory, as the *Duckor* court explained. As an initial matter, it is not entirely clear from the record whether the JT&T parties have a legitimate claim against the estate. Although they are listed as creditors in the bankruptcy proceedings, the JT&T parties have yet to file a proof of claim with the bankruptcy court as to any debt that Trailer Source owes them.[3] Moreover, on appeal to this court, the JT&T parties have not attempted to explain their precise claim against the estate. Nonetheless, because the deadline for filing proofs of claim has not passed and because Hyundai arguably conceded before the district court that the JT&T parties have some form of claim against the estate,[4] I assume for purposes of this appeal that the JT&T parties are in fact creditors.

However, even if the JT&T parties are creditors, that does not necessarily mean that they are persons aggrieved by the order permitting Hyundai to bring claims on the estate's behalf. A party does not automatically have appellate standing by virtue of being a creditor. *See, e.g.*, *Williams v. Cheves (In re Williams)*, 49 F. App'x 845, 847 (10th Cir. 2002); *Richardson v. Treacy, Shaffel, Moore & Mueller (In re Richardson Indus. Contractors, Inc.)*, 189 F. App'x 91, 93 (3d Cir. 1996); *Lopez v. Behles (In re Am. Ready Mix, Inc.)*, 14 F.3d 1497, 1500 (10th Cir. 1994); *Tilley v. Vucurevich (In re Pecan Groves of Ariz.)*, 951 F.2d 242, 245 (9th Cir. 1991). "[W]hether or not [a party] is a *creditor* misses the point. . . . To have standing to appeal, [the party] must demonstrate

---

[3] By contrast, six of Trailer Source's other eight creditors have already filed proofs of claim. The only other creditor not yet to have done so is a lawyer for Hyundai, which has already filed a proof of claim.

[4] In the very first sentence of its reply brief filed with the district court, Hyundai stated that "[t]he JT&T Parties are parties in interest in the Trailer Source case because they purport to assert a claim against the estate (although they have filed no proof of claim)." Because "party in interest" status is generally limited to the debtor, trustee, and certain creditors, see § 1109(b), this statement arguably concedes that the JT&T parties are creditors.

he has a direct and adverse pecuniary interest in each order he challenges." *In re Am. Ready Mix*, 14 F.3d at 1500.

Here, the JT&T parties have not pointed to evidence establishing that they will suffer a direct pecuniary loss if Hyundai cannot recover on the fraudulent conveyance claims for the estate, and thus do not have appellate standing despite their being creditors. A creditor generally has appellate standing to challenge an order affecting the specific "assets from which [he] seeks to be paid." *Salomon v. Logan (In re Int'l Envtl. Dynamics, Inc.)*, 718 F.2d 322, 326 (9th Cir. 1983); *see also Licensing by Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 388 (2d Cir. 1997). However, even a party asserting a claim against the estate must show a realistic likelihood of suffering pecuniary harm as a result of the complained-of action. *Cf. Schum v. Zwirn Special Opportunities Fund LP (In re The Watch Ltd.)*, 257 F. App'x 748, 750 (5th Cir. 2007); *Gibbs & Bruns LLP v. Coho Energy, Inc. (In re Coho Energy, Inc.)*, 395 F.3d 198, 203 (5th Cir. 2004) ("Even a claimant to a fund must show a realistic likelihood of injury in order to have standing."). As the record here currently stands, it is unclear whether allowing Hyundai to bring the avoidance and recovery action would even affect the payment of the JT&T parties' claim. The JT&T parties have not provided this court with any description of their claim or the assets out of which that claim could potentially be paid, much less pointed to evidence in the record to substantiate any such allegations.

Without this kind of evidence, it is impossible to ascertain whether there is a reasonable likelihood that the JT&T parties would actually be harmed in their capacity as creditors by the grant of derivative standing. If, for example, the estate contains little of value aside from the fraudulent conveyance claims and the JT&T parties' claim is unsecured and subordinate to those of all other creditors, it is very possible that the JT&T parties would not have recovered anything even in the absence of a grant of derivative standing to Hyundai.[5] Or, if the estate has additional assets and the JT&T

---

[5]This scenario is by no means unrealistic. The district court here found that the trustee had consistently testified that the estate contained little to no value. Moreover, in a bankruptcy court filing, the JT&T parties stated that they are mere general creditors.

parties have a small, secured claim that is superior to all other claims, then they will likely recover on their claim regardless of whether the adversary action brought by Hyundai is successful.  In either of these scenarios, permitting Hyundai to pursue the avoidance and recovery action could hardly be said to have a negative impact on the JT&T parties' interests as creditors.  *See In re The Watch Ltd.*, 257 F. App'x at 750 (stating, in dictum, that the creditor's injury was too speculative where he could not show a likelihood of recovering on his unsecured claim); *In re Richardson Indus. Contractors, Inc.*, 189 F. App'x at 93 (holding that unsecured creditor could not appeal decision determining priority among secured creditors because it would not affect the payment of his claims); *see also Fishell v. Soltow (In re Fishell)*, No. 94-1109, 1995 WL 66622, at *2 (6th Cir. Feb. 16, 1995) (holding that debtors lacked appellate standing because they had not provided information "regarding the estate's other assets and liabilities, the cost of litigation, or other factors regarding the litigation's impact on the estate"); *Chemlen v. Bank of Ir. First Holdings, Inc.*, No. 93-1592, 1993 WL 443822, at *3 (1st Cir. Nov. 3, 1993) (recognizing district court application of the same rule).  Thus, even if it is assumed that the JT&T parties have some sort of claim against the estate, they have not established that they were aggrieved by the reversal of the order denying derivative standing to Hyundai.

Furthermore, it is obvious from the adverse interests of the JT&T parties and the estate that the JT&T parties are not actually bringing this appeal as creditors.  Because of their dual status as creditors and adversary defendants, the JT&T parties will not actually suffer a pecuniary injury if the estate does not recover any assets as a result of the grant of derivative standing to Hyundai.  Although the JT&T parties have pointed to no evidence in the record to suggest that any money recovered for the estate by Hyundai would be applied to their claim, it is theoretically possible that this claim could go unpaid if the estate recovered little or nothing.  But it would also be the case in that situation that the JT&T parties paid little or nothing to the estate as defendants.  Because the JT&T parties are the source of the potential estate assets in question, every dollar of

their claim that goes unpaid as a result of Hyundai's not recovering any assets represents at least one dollar that they did not have to first pay to the estate.

Moreover, because Hyundai presumably could not recover any administrative expenses if it is not successful, see 11 U.S.C. § 503(b)(3)(B), a failed adversary proceeding would not drain the estate of assets and thereby indirectly affect the JT&T parties' claims. Thus, if the estate does not recover anything in the adversary proceeding brought by Hyundai, the JT&T parties do no worse than break even. In reality, however, the JT&T parties will fare far better if the estate does not recover. As the JT&T parties themselves assert, Hyundai is by far the estate's largest creditor and likely would be the primary beneficiary of a judgment favorable to the estate.[6] Because most of the money from such a judgment would go to Hyundai, the JT&T parties would not be able to recover all of the money as creditors that they paid into the estate as defendants and would thus suffer a considerable pecuniary loss.

The JT&T parties' contention that they have an interest in ensuring the maximization of estate assets is clearly disingenuous as asserted here. The best outcome for the estate, recovery of all of the assets that were allegedly transferred, is the worst outcome for the JT&T parties. Likewise, the best outcome for the JT&T parties, the estate recovering nothing, is the worst outcome for the estate. It is obvious from the adverse interests of the JT&T parties and the estate that the JT&T parties are not appealing as creditors of the estate, but as defendants to an adversary proceeding brought for the estate. *See Magnoni v. Globe Inv. & Loan Co. (In re Globe Inv. & Loan Co.)*, 867 F.2d 556, 560 (9th Cir. 1989) ("The appellants' cause of action . . . is a disingenuous attempt to use the Bankruptcy Code to their advantage. The appellants' request for relief shows them to be aggrieved property owners with interests adverse to the estate, not creditors.").

---

[6]Both in its motion for derivative standing and on appeal, Hyundai stated that it would subordinate its secured claims and receive a pro rata distribution from the recovery along with the allowed claims of other creditors if it were permitted to pursue the fraudulent conveyance claims on the estate's behalf. If Hyundai does this, the JT&T parties will still likely receive only a small percent of the monies obtained from a judgment against them, given the size of Hyundai's claim against the estate and the number of other creditors of the estate.

Because the JT&T parties will not suffer pecuniary harm if the estate does not recover any assets, this case is distinguishable from *Duckor*, 177 F.3d 774. In that case, upon which the JT&T parties rely, the Ninth Circuit held that one bankruptcy creditor, Duckor, had appellate standing to challenge the assignment of several causes of action possessed by the estate to another creditor, Baum. Both Baum and Duckor were among the various parties against whom the estate held separate claims. Because the estate could not afford to pursue the actions despite their significant value, the trustee assigned them to Baum. *Id.* at 776. Under the terms of the assignment, the decision of whether to pursue any of the claims was left solely to Baum. If it did pursue a claim and obtain a favorable judgment or settlement, however, Baum was required to pay one-half of its net proceeds to the estate. *Id.* at 777. The Ninth Circuit concluded that Duckor had appellate standing because the order transferred assets out of the estate and essentially abandoned all claims against Baum, which would surely not bring a cause of action against itself. *Id.* at 778. Unlike here, Duckor was not the source of all of the potential estate assets at issue. It was possible that money from the cause of action against Baum, which the trustee in effect abandoned, would actually have benefited Duckor. Moreover, there appears to have been at least some evidence in that case as to the nature of Duckor's claims against the estate, making its purported injury less speculative than those alleged by the JT&T parties here.

Finally, the JT&T parties do not have standing as creditors to challenge the grant of derivative standing on the alternative ground that this order could delay the bankruptcy proceedings. The only remaining injury that the JT&T parties, as creditors, may plausibly suffer as a result of the grant of derivative standing is having to wait longer for their claim against the estate to be paid out of an asset other than the judgment proceeds. But this harm is also highly speculative. As discussed, the JT&T parties have not even established that they would have received payment on their claim in the absence of the grant of derivative standing. Further, assuming that the estate would have had enough assets to satisfy the JT&T parties' claim, it is still not evident whether the grant will actually stall payment on that claim. If the JT&T parties have a secured claim

against the estate, for example, then they might not have to wait to be paid until the avoidance and recovery action against them is litigated or settled, as they assert. As secured creditors, the JT&T parties could request that the bankruptcy court lift the stay under 11 U.S.C. § 362(d) so that they could pursue their interests outside of the bankruptcy proceedings. *Cf., e.g.*, *In re Edwards*, 962 F.2d 641, 645 (7th Cir. 1992) ("[A] secured creditor can pursue his remedies outside of bankruptcy, and though the automatic stay might thwart him, he can ask the bankruptcy judge to lift it." (citations omitted)). Indeed, the record here reveals that this form of relief has already been granted to one of the estate's secured creditors, AmSouth Bank. Such a remedy might in fact lead to the quicker payment of the JT&T parties' claim.

Furthermore, such an injury appears to be remote and consequential, and thus insufficient for appellate standing. Generally, a creditor must show that an order immediately and concretely injures him, by, for example, reducing the amount of assets available for the payment of his specific claims or eliminating his specific interest in the estate. *See, e.g.*, *Kane v. Johns-Manville Corp. (In re Johns-Manville Corp., et al.)*, 843 F.2d 636, 642 (2d Cir. 1988) (order confirming amended plan gave creditor "less than what he might have received"); *In re Commercial W. Finan. Corp.*, 761 F.2d 1329, 1335 (9th Cir. 1985) (order eliminating appellant's secured interests in notes and disposing of estate assets out of which it sought to be paid). The JT&T parties point to no cases holding that a creditor has appellate standing to challenge an order that simply has the incidental effect of causing him to wait longer to receive payment from the estate. Where a creditor has not established an immediate, protected interest in the assets at issue, it cannot be that he may challenge an order because it may indirectly prolong the bankruptcy. Otherwise, a creditor could appeal virtually every order issued by the bankruptcy court, a result that the doctrine of appellate standing was specifically designed to prevent.

That the JT&T parties do not have appellate standing to challenge the reversal of the order denying appellate standing to Hyundai does not mean that other parties would not have been able to do so. The trustee here, for example, surely could have

appealed from the district court decision. As discussed, even if §§ 544(b) and 550(a) do forbid parties other than the trustee from bringing fraudulent conveyance actions for the estate, their aim in doing so is presumably to preserve the trustee's role as the administrator of the estate. It is also possible that other creditors of the estate would have had appellate standing. If, for instance, another creditor offered evidence substantiating an allegation that its claims might go unpaid as a result of the grant of derivative standing, that creditor might have been considered a person aggrieved. But neither the trustee nor any other creditors participated in proceedings before the district court and then attempted to join in the present appeal. The JT&T parties may not, as they attempt to do, use the interests of those entities to gain appellate standing. It is well-established that a party "cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). This general prudential limitation is "particularly relevant" to appellate standing in bankruptcy proceedings, which

> regularly involve numerous parties, each of whom might find it personally expedient to assert the rights of another party even though that other party is present in the proceedings and is capable of representing himself.

*In re PWS Holding Corp.*, 228 F.3d 224, 248 (3d Cir. 2000) (citation omitted); *see also AgriProcessors, Inc. v. Iowa Quality Beef Supply Network, LLC (In re Tama Beef Packing, Inc.)*, 92 F. App'x 368, 369 (8th Cir. 2004).

## B.

For similar reasons, the JT&T parties do not have appellate standing to challenge the order lifting the automatic bankruptcy stay so that Hyundai can bring an independent action against them to recover on its secured interests. As defendants to such an action, the JT&T parties may suffer a pecuniary loss, but that loss is not protected by the automatic stay provisions of the Bankruptcy Code. The JT&T parties have not pointed to any cases suggesting that the automatic stay provisions of the Code exist to protect

parties who potentially owe money to the estate, as opposed to the estate itself or creditors of the estate.

Moreover, as alleged creditors, the JT&T parties have not offered any evidence establishing that there is a reasonable likelihood that the payment of their claims against the estate would be affected by the lifting of the stay for this purpose. The JT&T parties have not shown, for example, that they also have an interest in the assets that Hyundai claims to have a secured interest in, such that their claims may go unpaid if the stay is lifted. The JT&T parties similarly have not explained why the bankruptcy proceedings would be significantly delayed if Hyundai were permitted to bring suit outside of the bankruptcy.

I note that several courts have held that creditors may never challenge bankruptcy orders that lift the automatic stay or that address violations of this protection. This is because, those courts have reasoned, the automatic stay "is intended solely to benefit the debtor estate." *E.g.*, *In re Pecan Groves of Ariz.*, 951 F.2d at 245; *see also In re Am. Ready Mix*, 14 F.3d at 1501. Consequently, these courts have concluded that only the trustee, or in some instances the debtor, can enforce the automatic stay's protections or appeal if it is lifted. *See, e.g.*, *Marin v. Midland Loan Servs., Inc. (In re Marinkovic)*, 158 F. App'x 885, 886-87 (9th Cir. 2005) (order annulling the automatic stay); *In re Am. Ready Mix*, 14 F.3d at 1501 (order lifting the automatic stay as to one creditor); *In re Pecan Groves of Ariz.*, 951 F.2d at 245 (violation of the stay). While this rationale supports my conclusion here, it is unnecessary to adopt such reasoning if, as I conclude, the JT&T parties do not have appellate standing for the reasons stated above.

I would dismiss the JT& T parties' appeal for lack of standing.